**LOCAL UNION NO. 2812, LUMBER PRODUCTION AND INDUSTRIAL WORKERS, Plaintiff-Appellant,**

v.

**MISSOULA WHITE PINE SASH COMPANY, a Montana corporation, Defendant-Appellee.**

No. 83–3776.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1983.

Decided June 12, 1984.

Harland Bernstein, Bernard Jolles, Jolles, Sokol & Bernstein, P.C., Portland, Or., for plaintiff-appellant.

Sherman V. Lohn, Garlingon, Lohn & Robinson, Missoula, Mont., for defendant-appellee.

Before ANDERSON, FLETCHER, and FARRIS, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Missoula White Pine Sash Co. (White Pine) discharged its fourteen most junior employees out of the 94 it had laid off, stating, "[W]e can see no reasonable expectations of being able to recall all our employees who are currently laid off due to the depressed economy." Local Union No. 2812, Lumber Production and Industrial Workers (Union) appeals the district court's judgment that the terminations were not a breach of the collective bargaining agreement between it and White Pine. We affirm, holding that the terminations were not a breach of the express provisions of the agreement nor did the agreement contain an implied covenant that White Pine could discharge its employees only for just cause.

*No Breach of Express Covenant*

■ The existence of an employee's seniority rights or any limitation of an employer's right to discharge must find its source in the collective bargaining agreement. *Broniman v. Great Atlantic and Pacific Tea Company,* 353 F.2d 559, 561 (6th Cir.1965), *cert. denied,* 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 360 (1966). The agreement between White Pine and the Union contains a "Hire and Discharge" provision:

> The Company shall have the sole and exclusive right to hire, discipline and discharge any employee. In the event that an employee shall be suspended or discharged from his employment, and he believes he has been unjustly dealt with, such suspension or discharge shall remain effective, but shall constitute a case to be handled under methods of adjusting grievances under Article V, Handling Complaints. Such grievances shall be taken up with the company within three (3) working days from the date the employee is informed of a suspension or discharge, or shall be considered waived. If, upon investigation and consideration, the Shop Committee and Company agree that an employee was unjustly discharged and should be reinstated, such reinstatement shall be in accordance with the terms of settlement arrived at between the Company and Shop Committee. In case an employee is discharged, the Company agrees to notify the employee and the Shop Committee immediately, giving the reason(s) for discharge.

■ We agree with the district court that this provision carefully protects White Pine's common law unrestricted right to discharge. If the employee believes that his discharge was unjust, the agreement provides for a grievance procedure by which he may air his complaint to the shop committee and the management. If, however, the management does not agree, the employee will not be reinstated. This com-

ports with the "General Purpose" provision which requires only that the parties consider all questions "fairly, impartially and justly," not that they need reach an agreement.

■ The Union, however, relies on two other provisions as support for its argument that the agreement restricts White Pine's discharge authority. The first is the "Union Security and Check-off" provision:

It is agreed that new employees shall not and do not become regular employees of the Company, unless during the first thirty (30) days of actual work following their last employment, the Company finds them to be satisfactory employees; and prior membership in the Union shall have no bearing upon the Company's privilege during the first thirty (30) days of actual work of probationary employment to terminate the service of any such employee.

The Union contends that if the Hire and Discharge provision already affords White Pine an unrestricted right to discharge, this provision is redundant. It is not superfluous, however, in that unlike in the Hire and Discharge provision, the probationary employee is not allowed to file a grievance nor is White Pine required to notify the Shop Committee of the reason for the discharge.

The second portion of the agreement relied upon by the Union is the "Seniority" provision:

C.... No seniority right or privilege shall accrue to any employee who is not retained in the employ of the Company for thirty (30) days of actual work, but after such thirty (30) days of actual work, seniority shall be computed from the first day of the employee's last employment with the Company. In case of lay-off because of slackness of work, employees hired last shall be laid off first and the reverse shall apply when being put back to work, those laid off first shall be rehired last. All employees shall have the right to work in the order of their seniority provided they are competent. Any employee who is laid off shall be returned to work at his regular status when operations are resumed.

. . . . .

G. An employee shall forfeit his seniority for the following reasons:

. . . . .

(2) If he is discharged unless re-hired within thirty (30) days or in accordance with provisions of Article VIII, Hire and Discharge.

■ The Union interprets this provision to mean that when there is a slackness of work due to economic conditions, White Pine is required, no matter how dim the prospect of rehire, to lay off, rather than discharge, employees. Furthermore, the Union argues, since the agreement contains no limitation on the length of time an employee may remain on layoff status, the employee has a virtually unlimited right of recall.

In support of a mandatory layoff, the Union singles out the phrases, "In case of lay-off because of slackness of work, employees hired last shall be laid off first ...," and, "Any employee who is laid off shall be returned to work ... when operations are resumed." We believe the Union's emphasis to be misplaced. The provision is entitled "Seniority," not "Layoff," and when read as a whole merely delineates the mechanical operation of the seniority apparatus, i.e., the time at which seniority rights begin to accrue (after thirty work days), and, in the event White Pine chooses to lay off employees, the order in which the work force shall be reduced (employees hired last shall be laid off first), the order of rehire (those laid off first shall be rehired last), and the employee's position upon rehire (regular status).

Seniority rights, moreover, are expressly subject to forfeiture if the employee is discharged and not rehired within thirty days. The agreement contains no "discharge for just cause" qualification nor any limitation on White Pine's right to make good faith economic decisions concerning the size of its work force. White Pine's good faith is not questioned. Thus, we find no basis for

construing the agreement to afford employees on layoff status greater insulation from discharge than that afforded those on active duty. In this regard, we find the reasoning of the Seventh Circuit instructive:

Seniority rights depend upon an employer-employee relationship; they do not guarantee such a relationship but merely define the rights of an employee when that status is in existence, and the right of seniority is not inconsistent with the right of an employer to discharge its employee.

*Local Lodge 2040, International Association of Machinists, AFL–CIO v. Servel, Inc.*, 268 F.2d 692, 698 (7th Cir.), *cert. denied*, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959) (citation omitted).

*No Implied Covenant to Discharge for Just Cause*

 Generally, unless restricted by the collective bargaining agreement, an employer may discharge an employee for good cause, bad cause, or no cause at all without violating the National Labor Relations Act as long as the motivation is not to punish protected union activity. *L'Eggs Products, Inc. v. National Labor Relations Board*, 619 F.2d 1337, 1341 (9th Cir.1980). The Union does not contend that these discharges were connected with union activity. Rather, it argues that the agreement contains an implied covenant that White Pine not terminate an employee except for just cause. It relies on the unpublished opinion in *Local 2750 Lumber and Sawmill Workers Union v. Cole*, No. 980 (D.Oregon 1978), *rev'd in part*, 663 F.2d 983 (1981) in which the court implied a just cause standard. The decision in the *Cole* case was based upon contract language which defined "grievance" as a complaint of "disciplinary action without *just cause*" and which provided that "[i]f upon investigation it is *found* that such employee was *unjustly suspended or discharged*, he [would be] reinstated upon such condition as the Union and Employer agree." (Emphasis added). We agree with the analysis of the district court that the agreement involved here is materially distinguishable from that in *Cole:*

[The contract language in *Cole* ] contemplates a finding, and it is not difficult to infer that at a hearing the employer will act in good faith in making the finding as to just cause. In this case, however, the language is "[i]n the event that an employee shall be suspended or discharged from his employment, and he believes he has been unjustly dealt with, such suspension or discharge shall remain effective ...." There is no requirement that the company and shop committee make a finding, but rather that the employee remain discharged unless the company and the shop committee shall "agree."

Moreover, given that this agreement does not provide for arbitration, but does contain an express provision covering discharges, allotting to White Pine the "sole and exclusive right to hire, discipline and discharge any employee," indicates to us that the parties did not intend to limit the common law right of the employer to discharge at will. Had such been the intention, it could easily have been incorporated into the agreement. Cause for discharge is too important a matter to be thought to have been overlooked, and too customarily dealt with expressly, for us to assume that the parties either unconsciously left it out, or intentionally omitted it, thinking it to be implicit. It is not for this court to substitute its judgment for that of White Pine as long as White Pine exercises its prerogatives in good faith and in accordance with its contractual obligations. To do otherwise would be to subvert the collective bargaining process by remaking the collective bargaining agreement. Accordingly, the district court is

AFFIRMED.

FLETCHER, Circuit Judge, dissenting:

I respectfully dissent. The majority holds that White Pine may discharge any or all of its laid-off employees at any time, without regard to seniority. Its interpretation of the collective bargaining agreement

ignores the contract's declaration that "[a]ll employees shall have the right to work in the order of their seniority provided they are competent. Any employee who is laid off shall be returned to work at his regular status when operations are resumed." By discharging laid-off workers, White Pine could destroy arbitrarily the workers' contractual right to be rehired in order of seniority. It could also rehire these same employees in the future without the other benefits of seniority for which they bargained, such as the right to be laid off in order of seniority and the right of a senior employee to "bump" a less senior employee in another department if there were a cutback in the more senior employee's department. The majority's interpretation eliminates significant rights upon which the parties have agreed.

The Supreme Court has recognized that "in common parlance and in industrial parlance" a discharge is quite different from a lay-off, which occurs "when the slackening of work require[s] a reduction in forces." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 286–87, 66 S.Ct. 1105, 1111–12, 90 L.Ed. 1230 (1946). The only sensible interpretation of the contract which gives all of its terms meaning is one which recognizes the distinctive treatment the agreement and the contracting parties give to each of these situations. Provisions relating to "discharge," including Article VIII, which gives the employer the exclusive right to hire and discharge employees, and Article XIV, section G(2), which provides that an employee who is discharged forfeits seniority, refer only to the discharge of an employee who is actively working for the employer. The employer's right to discharge in this situation does not unreasonably conflict with seniority rights because it can be assumed that the employer will not arbitrarily terminate the competent workers it needs to keep its business going. Further, grievance procedures are provided for any such discharged employee who feels himself unjustly dealt with. The same assumption does not apply to the termination of laid-off employees for whom the employer has no immediate need, as the employer's conduct in this case demonstrates. The contract is specific that laid-off employees have an absolute right to be rehired in order of seniority, subject only to the express limitation that they be competent. Because the employer has violated the collective bargaining agreement by discharging laid-off employees, I would reverse.