Joe E. **DICKESON**, Plaintiff-Appellant,

v.

**DAW FOREST PRODUCTS COMPANY,
a Delaware limited partnership,
Defendant-Appellee.**

No. 86–3800.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1987.

Decided Sept. 10, 1987.

John A. Bardeli, Spokane, Wash., for plaintiff-appellant.

Robert W. Castellaw, Coeur d'Alene, Idaho, for defendant-appellee.

Before FLETCHER, BOOCHEVER and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Joe Dickeson appeals the magistrate's grant of summary judgment in favor of the defendant, DAW Forest Products Company. He alleges that the magistrate erred in ruling (1) that the grievance procedure in the collective bargaining agreement does not provide a right to be discharged only for good cause; and (2) that he was employed for an indefinite term and therefore could be discharged without good cause under state law. We reverse and remand with regard to the claim under the collective bargaining agreement, but do not reach the state law claim.

## FACTS

Joe Dickeson began working for DAW Forest Products Company (DAW) or its predecessor, Diamond International Corporation, in 1967. For many years he worked as a "day shift upstairs oiler and millwright helper." When that position was eliminated, on about October 1, 1984, he began a new job as "basement oiler." Two days later, after various incidents in which the basement machinery malfunctioned, Dickeson was discharged.

Dickeson, at the time of his discharge, was a dues-paying member of the International Woodworkers of America, AFL–CIO, Local Union No. 3–10, which had a collective bargaining agreement with DAW for the benefit of employees of DAW. Dicke-

son invoked its grievance procedures to challenge his discharge. When the decision remained unchanged, he commenced this action in Idaho state court. The case was thereafter removed to federal court. DAW moved for summary judgment, which was granted by the federal magistrate. Dickeson timely appeals.

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo. Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986).

## DISCUSSION

### I. *Section 301*

Dickeson asserts that the collective bargaining agreement confers on him the right to be discharged only for just cause. He argues that the court may infer the parties' intent to confer this right from the language of the grievance procedure clause. As a threshold matter, we must determine whether Dickeson may maintain an action against DAW under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

In *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976), the Supreme Court held that federal courts must defer to contractually formulated procedures. If an employee pursues a grievance procedure under a collective bargaining agreement that the parties intended to be final, and receives an adverse determination, he may not challenge that determination under section 301 unless he shows that the union breached its duty of fair representation, *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), or that the procedure was otherwise infected. *Huffman v. Westinghouse Electric Corp.*, 752 F.2d 1221, 1223 (7th Cir. 1985); *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir.1981).

Dickeson did not name the Union as a party, nor has he ever alleged that the Union violated its duty of fair representation. Dickeson also has not asserted that the grievance procedure was otherwise infected. The issue, then, is whether the parties intended the grievance procedure to be final.

The agreement's grievance provision establishes a four-level procedure that culminates in a hearing before two company officials and a union representative. After the final meeting, the company must provide the Union with its determination in writing. If the Union disagrees with the company's decision, the Union is permitted to call a strike. The collective bargaining agreement provides no other remedy. Further, the collective bargaining agreement does not state expressly whether the grievance procedure is final. Collective Bargaining Agreement, Art. 18.

If the grievance procedure is deemed final, the company's determination is binding, and the Union's exclusive remedy is to strike. In a case such as this when the contract is silent as to whether the grievance procedure is final and the only remedy is to strike, we are very hesitant to conclude that the parties intended that the procedure be final. In *Associated General Contractors v. Illinois Conference of Teamsters*, 486 F.2d 972 (7th Cir.1973), the Seventh Circuit was required to interpret a similar grievance procedure. It concluded the agreement was not final. We agree. *See also S.J. Groves & Sons Co. v. International Brotherhood of Teamsters*, 581 F.2d 1241 (7th Cir.1978). Although the right to strike is protected, it is not a preferred method for resolving differences. Prohibiting access to the courts bypasses an opportunity to use reason in favor of "economic warfare." *Associated General Contractors*, 486 F.2d at 976. Although parties to a collective bargaining agreement may choose to designate strikes as the sole means of objecting to management decisions, we think they must do so expressly before we may find judicial divestment. No preference need be accorded strikes as a noble dispute resolution mechanism. Accordingly, we conclude that the

grievance procedure was not intended to be final. Having exhausted the administrative process, Dickeson may bring suit against DAW under section 301.

## II. *Implied Covenant of Discharge Only For Good Cause*

Dickeson asserts that because the grievance procedure contemplates a determination of whether a termination was for good cause, the collective bargaining agreement confers on him a right to be discharged only for good cause. An employer ordinarily may discharge an employee "for good cause, bad cause, or no cause at all without violating the National Labor Relations Act," *Local Union No. 2812 v. Missoula White Pine Sash Co.*, 734 F.2d 1384, 1387 (9th Cir.1984), *cert. denied*, 470 U.S. 1085, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985), unless restricted by the collective bargaining agreement or unless the employer's purpose is to punish protected union activity. *Id.*

■ Dickeson asserts that an implied covenant in the agreement restricts the traditional management prerogative concerning discharge. The collective bargaining agreement does not address expressly whether an employee may be discharged without good cause. Courts may, however, expand by implication the provisions of a collective bargaining agreement more readily than the provisions of an ordinary contract. *Smith v. Kerrville Bus Co.*, 709 F.2d 914, 917 (5th Cir.1983).

■ In *White Pine*, we held that a right to discharge only for good cause could not be inferred from a grievance procedure that did not contemplate a "finding" as to whether a discharge was made with good cause, and that provided that an employee would remain discharged unless the employer and the union agreed that he should be reinstated. *White Pine*, 734 F.2d at

1387. The clause at issue in this case is materially different in both respects. The grievance procedure states that, "If it is *found* that an employee was *unjustly discharged* ...," Collective Bargaining Agreement, Art. 18 § 2 (emphasis added),[1] and thus contemplates a finding. Requiring reinstatement after a finding that an employee was unjustly discharged is but the other side of a coin mandating good cause for termination of an employee. Although the company, through two representatives, retains control over the decision, once we accept that a finding is to be made, " 'it is not difficult to infer that at a hearing the employer will act in good faith in making the finding as to just cause.' " *White Pine*, 734 F.2d at 1387 (quoting district court's unpublished opinion). Further, the provision expressly states that when the company finds that an employee has been discharged without good cause, the management *shall* reinstate the employee. The mandatory language divests the employer of discretion and requires that an improper discharge be remedied.

■ The agreement in *White Pine* contained also an express clause stating that the company has "the sole and exclusive right to hire, discipline and discharge any employee." *Id.* The DAW contract includes a broad catchall provision, which accords the company all the rights customarily exercised by management that are not expressly limited by the agreement. Collective Bargaining Agreement, Art. 23. There is, however, no provision like that in *White Pine*, concerning management's traditional prerogative over discharge. In light of Article 18, § 2's requirements of making a finding and restoring an unjustly terminated employee, we conclude that the catchall provision is limited by Article 18,

1. Article 18, § 2 states:
   *Section 2:* In the event any employee claims to have been unjustly discharged or suspended during the life of this Agreement, the Grievance Procedure specified in Section 1 of this Article shall be followed. If it is found that an employee was unjustly discharged or suspended, he shall be reinstated in employ-
   
   ment in accordance with the terms of the settlement of the grievance, which may include making whole all his rights and privileges and pay for time lost. Upon request of the Union, the Company will state in writing the reason for discharge or suspension of the employee.

§ 2, which provides that discharge can be upon good cause only.[2]

■ We agree that it is not for this court to "subvert the collective bargaining process by remaking the collective bargaining agreement," *White Pine*, 734 F.2d at 1387, and we do not do so here. Contrariwise, we find it difficult to imagine a meeting of the minds between an employer and a union authorizing an employer to discharge an employee without good cause. Employer security goes to the very essence of a collective bargaining agreement. *See Peerless Laundry Co.*, 51 Lab.Arb.Rep. (BNA) 331, 332–34 (1968); *Keeney Mfg. Co.*, 40 Lab.Arb.Rep. (BNA) 974, 976–77 (1963).[3] The effect of unbridled discretion to discharge is particularly severe in such cases as this where an employee has worked for the same employer for many years. *Cf. Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722, 729 (1980) (discussing harshness of employment at-will doctrine). In light of the requirements of the grievance procedure, and our reluctance to infer that a union would forego job security for its employees, we conclude that the collective bargaining agreement confers a right to discharge only for good cause.[4]

## CONCLUSION

The collective bargaining agreement protects Dickeson from discharge without good cause. We therefore reverse the summary judgment and remand for trial or such other proceedings as the District Court deems suitable.

---

2. *White Pine* also relied on the fact that the claim could not be resolved through arbitration. Although the DAW contract similarly does not provide for arbitration, we find this factor insignificant in this case. An arbitration procedure limits an employer's authority over discharge decisions. It is, however, but one method of limiting employer discretion. This function will also be served, as here, by a grievance procedure that requires a finding on good faith and that requires particular action based on that finding.

3. Although arbitral rulings have no precedential effect, *Kerrville*, 709 F.2d at 918 n. 2, they can provide valuable guidance in the area of wrongful discharge.

4. Because we find that Dickeson is protected from discharge without good cause under the terms of the collective bargaining agreement, we do not reach his state law claim.