**TRUCK DRIVERS, OIL DRIVERS, FILLING STATION AND PLATFORM WORKERS' UNION LOCAL 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA (AFL–CIO), Plaintiff–Appellant,**

v.

**SCHNEIDER TANK LINES, INCORPORATED, Defendant–Appellee.**

No. 91–1405.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1991.

Decided Feb. 27, 1992.

Sherman Carmell (argued), Adrianne E. Hampo, Carmell, Charone, Widmer, Mathews & Moss, Chicago, Ill., for plaintiff-appellant.

Jack Osswald, Chicago, Ill. (argued), for defendant-appellee.

Before BAUER, Chief Judge, and POSNER and MANION, Circuit Judges.

POSNER, Circuit Judge.

A teamsters local brought this suit under section 301 of the Taft–Hartley Act, 29 U.S.C. § 185, charging that a truck company broke the parties' collective bargaining contract. The district judge granted the company's motion for summary judgment and dismissed the suit.

The company had fired one of its long-time drivers for having failed to report an accident in which chemicals spilled from his tank truck. The union filed a grievance over the dismissal. The grievance committee, which pursuant to the collective bargaining agreement was composed of equal numbers of company and union representatives, deadlocked. The agreement neither specified a further dispute-resolution process other than resort to economic muscle ("all lawful economic recourse," in the language of the agreement) nor forbade the company to fire an employee without just cause. The union argues that a just-cause clause should be read into the agreement and that the violation of that implied clause is actionable in a suit under section 301 notwithstanding the "all lawful economic recourse" clause. The company argues that the union's only remedy was to strike in protest against the driver's being fired.

The union embellishes its forcefully argued position with quotations—some from very high sources indeed—concerning the desirability of resolving labor disputes without the disruption entailed by a strike. *Groves v. Ring Screw Works,* —— U.S. ——, 111 S.Ct. 498, 502–03, 112 L.Ed.2d 508 (1990); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 453–55, 77 S.Ct. 912, 916–17, 1 L.Ed.2d 972 (1957). But it acknowledges as it must that the question is ultimately one of contract interpretation ("the parties may expressly agree to resort to economic warfare rather than to mediation, arbitration, or judicial review," *Groves v. Ring Screw Works, supra,* 111 S.Ct. at 502–03; see also *Standard Food Products Corp. v. Brandenburg,* 436 F.2d 964, 966 (2d Cir.1970)) and that consequences are only one criterion of meaning; nor, as we shall see, is avoiding a strike the only consequence to be considered in deciding which party has the better interpretation. We add that while many judicial opinions contain statements to the effect that the interpretation of labor contracts is special, that the ordinary rules of contract interpretation don't apply, and so forth, most of that language traces back to cases which hold that labor *arbitrators* are not bound by conventional principles of contract interpretation. E.g., *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960); cf. *Merk v. Jewel Food Stores Division,* 945 F.2d 889, 901 (7th Cir.1991) (dissenting opinion). The agreement in issue here does not contain an arbitration clause, although, as we shall see, its successor does.

Labor arbitrators can do pretty much what they want in the way of interpretation, since a judge is not permitted to substitute his own contractual interpretation for that of the arbitrator. *United Paperworkers v. Misco,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987); *Chicago Typographical Union v. Chicago Sun–Times, Inc.,* 935 F.2d 1501, 1505 (7th Cir.1991). But it is not at all clear how *judges,* who are not experts in labor disputes, are to go about interpreting labor contracts without contract law—what

else do they have to go on, lacking as they do the specialized knowledge and experience that labor arbitrators bring to the interpretive task? If all that is meant in saying that labor contracts are "special" is that every contract must be interpreted with due regard to the setting out of which it arises, as suggested in *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960), and *Transportation–Communication Employees Union v. Union Pacific R.R.*, 385 U.S. 157, 161, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966), the proposition is as harmless as it is empty, since the ordinary principles of contract law are flexible enough to be applied in atypical contractual settings.

The agreement in this case—seventeen pages of small print—contains a recognition clause and elaborate provisions regarding wages, hours, working conditions, seniority, and other matters. The article on grievances requires submission of employee grievances not satisfactorily resolved between the union and the company "to a Joint Grievance Board composed of three (3) Employer representatives designated by the Joint Area Tank Truck Association and three (3) Union representatives.... If the Joint Grievance Board resolves the dispute by a majority vote of those present and voting, then such decision shall be final and binding upon the Union, Employer, and Employee. If the Joint Grievance Board is deadlocked on the disposition of the dispute, then either party shall be entitled to all lawful economic recourse to support its position in the matter." This article had been carried over from the parties' previous collective bargaining agreement, and perhaps from earlier ones. After the dispute, the company agreed at the union's request to add a clause requiring arbitration in the event of a deadlock in the grievance board. We do not know what if any concessions the union made in exchange for this amendment. Nor do we know whether such a deadlock had ever resulted in a strike, lockout, or other economic pressure tactic by either party—except we do know that the union did not call a strike over the deadlocked grievance in this case. Pretrial discovery failed to illuminate these or any other factual questions that might be material to the interpretive questions, and the district judge was therefore correct to resolve those questions on summary judgment. *Dribeck Importers, Inc. v. G. Heileman Brewing Co.*, 883 F.2d 569, 573 (7th Cir.1989); *City of Clinton v. Moffitt*, 812 F.2d 341, 342 (7th Cir.1987); *Smith v. Kerrville Bus Co.*, 799 F.2d 1079, 1081 (5th Cir.1986).

The company has rightly abandoned the following argument that it pressed unsuccessfully in the district court: Since, in the absence of a just-cause clause, the firing of the driver could not have violated the collective bargaining agreement, the federal courts have no jurisdiction of this case under section 301, a statute limited to providing remedies for the breach of such agreements. This is to say that if a party sues for breach of contract and loses, his suit should be dismissed not on the merits but for want of jurisdiction—in which event no decisions in favor of defendants would ever be final and binding! *Hixon v. Sherwin–Williams Co.*, 671 F.2d 1005, 1007 (7th Cir.1982); and see *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991). The union's suit is based on a claim that a just-cause clause is implicit in the collective bargaining agreement, and if this is right there was a breach of contract. If it is wrong the union rightly lost on the merits, but that would not mean that this was not a breach of contract suit; what else could it have been? Nor was the suit frivolous, an alternative ground for dismissal for want of jurisdiction—but with the dismissal constituting a binding determination that the suit has (absolutely) no merit, a determination that would bar relitigation in another court. *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 276–78 (7th Cir.1988).

Genuinely jurisdictional, however, is the company's argument that the reference in the collective bargaining agreement to "economic recourse" deprived the district court of jurisdiction by substituting, as would an arbitration clause, an alternative dispute-resolution machinery. The agree-

ment authorizes the parties to use economic muscle to resolve a grievance deadlocked in the grievance board, and the company asks us to infer that no other form of remedy is authorized. But if the union is right, the collective bargaining agreement contains an implicit just-cause provision, and *Groves v. Ring Screw Works* holds that a just-cause provision is judicially enforceable notwithstanding the presence of an "economic recourse" clause.

So everything depends on the meaning of the agreement. The union argues that a judicially enforceable just-cause provision should be read into it in order to preclude a strike over the dismissal of an employee. A strike does seem a clumsy, and worse a disproportionately costly, method of resolving a dispute over whether one employee should have been retained. But its very costliness puts pressure on the parties to resolve their dispute either informally or in the grievance board, and for all we know the vast majority of the grievances against this employer are resolved in this way at a lower overall cost than if either party could sue in court if the grievance weren't resolved. Moreover, courts are not comfortable resolving labor disputes. See, e.g., *Brotherhood Railway Carmen Division v. Atchison, Topeka & Santa Fe Ry.*, No. 90–3800, slip op. at 8, 956 F.2d 156, 160 (7th Cir. Feb. 6, 1992). Most collective bargaining agreements contain an arbitration clause, *S.J. Groves & Sons v. International Brotherhood of Teamsters*, 581 F.2d 1241, 1244–45 n. 6 (7th Cir.1978); and in the railroad industry the arbitration of grievances is compulsory. Railway Labor Act, 45 U.S.C. § 153 First; *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry.*, 768 F.2d 914, 920–21 (7th Cir.1985). But this is not a railroad case, and the collective bargaining agreement did not contain an arbitration clause. Maybe, as the company argues, the omission is pregnant. Maybe the parties did not want their disputes resolved by any adjudicative-type mechanism beyond the grievance board.

Another omission is a just-cause provision. This makes rather hollow the union's reminder that in *Groves v. Ring Screw Works* the Supreme Court held that a provision in a collective bargaining agreement authorizing the parties, as here, to enforce their disputes by strikes and other pressure tactics did not preclude the union from suing to enforce the agreement's just-cause provision. Precisely because there *was* a just-cause provision, and because a strike is not a method of answering the question whether an employee was dismissed for just cause (or any other question—a strike is not an adjudicative mechanism), the Court thought it unlikely that the parties had intended to prevent recourse to the courts to resolve that question. When there is no just-cause provision, the inference is stronger that the agreement leaves disputes over dismissal to the industrial battleground.

The union argues that unless we interpolate a just-cause provision into the agreement in this case the grievance procedure specified in the collective bargaining agreement would be empty. The grievance board would, one, have no basis for ordering an employee reinstated and, two, if the company did nevertheless lose before the board it could still fire the employee because, on the company's interpretation of the agreement, he is an employee at will. Neither point is compelling, and though they are supported by dicta in the Ninth Circuit's opinion in *Dickeson v. Daw Forest Products. Co.*, 827 F.2d 627, 631 (9th Cir. 1987), even that court has refused to read just-cause clauses into all collective bargaining agreements. *Local Union No. 2812 v. Missoula White Pine Sash Co.*, 734 F.2d 1384, 1387 (9th Cir.1984). (A case much like ours, by the way.) Take the second point—the company can fire the employee regardless of what the grievance board decides—first. This is simply wrong. The agreement provides that if the board is *not* deadlocked its decision is binding; if it is deadlocked, there is no decision. So if the company loses, it *must* reinstate the employee; it cannot thumb its nose at the grievance board. If the company reinstates the employee and then fires him without some fresh reason for doing so, this would be a breach of the agreement to

accept the board's decision and the union could go into court and get the company enjoined, just as it could do if an employee at will who had been ordered reinstated because he had been fired in violation of public policy were refired the next day. *Dhaliwal v. Woods Division,* 930 F.2d 547 (7th Cir.1991).

As for the first point—that without a just-cause provision the grievance board would have no basis for ordering an employee reinstated—the absence of such a provision means simply that the grievance board has untrammeled and unchanneled discretion as to whether to order an employee reinstated. As we know from other contexts, nothing is more common than making provision for dispute-resolution procedures without prescribing substantive standards for the dispute resolvers to apply. *Wallace v. Robinson,* 940 F.2d 243, 248 (7th Cir.1991) (en banc). Discretion is not foreign to law or dispute resolution.

We find the company's interpretation more persuasive, as did the district court. The company is in the business of transporting chemicals, some of them hazardous; there is an ever-present risk of accident and resulting tort liability; so the company wants a free hand in firing drivers. It therefore refused (till after the dispute in this case) to surrender control of its firing decisions to an arbitrator or court. It insisted that the trucker representatives on the grievance board have an impregnable veto over decisions to reinstate a fired employee. For a judicially or arbitrator-enforced remedy the parties substituted economic self-help.

This is the most natural reading of the contract; and while we don't think that people who negotiate contracts are omniscient, it does strain credulity to suppose that the employer and the union just forgot to include a just-cause provision or, at the least, an arbitration clause. The latter would imply the former, *Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310, 312–13 (7th Cir.1981); *International Ass'n of Machinists v. General Electric Co.,* 865 F.2d 902, 903 (7th Cir.1989), because an arbitrator is going to feel free to order the rein-

statement of an employee who he doesn't think gave cause for being fired—that is what labor arbitrators *do* in employee grievance cases. The quotations that the union presses on us from labor arbitrators who infer a just-cause provision from the arbitration clause itself do nothing for the union's position in this case. There is no arbitration clause, and no just-cause clause. If the grievance board deadlocks, the union must either abandon the grievance or call for a strike.

AFFIRMED.