**UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA, Carpenters District Council of Denver and Vicinity, and United Brotherhood of Carpenters & Joiners of America, AFL-CIO, Colorado State Council of Carpenters its Affiliated District Councils and Affiliated Local Unions, and Leslie Prickett, Adolph Lavalle and James McFarland, Appellants,**

v.

**HENSEL PHELPS CONSTRUCTION COMPANY, a Colorado corporation, Appellee.**

No. 8634.

United States Court of Appeals Tenth Circuit.

Feb. 6, 1967.

Rehearing Denied June 7, 1967.

---

5. See also United States v. Kessler, 213 F.2d 53 (3 Cir. 1954).

Wayne D. Williams, Denver, Colo. (Howard E. Erickson, Denver, Colo., on the brief), for appellants.

Bennett S. Aisenberg, Denver, Colo. (Charles E. Grover, Denver, Colo., on the brief), for appellee.

Before BREITENSTEIN and SETH, Circuit Judges, and KERR, District Judge.

SETH, Circuit Judge.

The appellee, Hensel Phelps Construction Company, brought this action under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, for damages for breach of collective bargaining agreements. The defendant-appellants are labor organizations and individuals representing a single union which was a party to the agreements. The action was tried to the court, and judgment was rendered against the appellant-union in the amount of $8,000.00. The union took this appeal.

The disagreement arose between the parties over the question whether certain work done by appellee's carpenter employees on an elevated ramp for automobiles to reach the entrance to the Denver airport was to be paid at the rate for building work or highway work. The issue raised the question as to which of two collective bargaining agreements would be applicable to this type of work, both agreements being between the same parties. The amount of the judgment appealed from represents the difference between the two wage scales.

The trial court concluded that the union had breached its highway collective bargaining agreement with appellee Phelps by causing a work stoppage without first complying with the disputes procedure of such agreement.

The facts, about which there is no dispute, may be summarized as follows:

Appellee Phelps had been awarded a contract by the City and County of Denver, Colorado, to construct an air terminal building and an elevated drive at Stapleton Airfield in Denver.[1] Phelps was a member of the Associated Building Contractors of Colorado, Inc., hereinafter "ABC." ABC, representing its members, had negotiated a master collective bargaining contract with the appellant union, which contract is captioned "Building Construction Agreement Carpenters," and to which we will refer as the "building contract." Article I, section 4, of the building contract describes in detail the carpenter work within the

---

1. The letter awarding the contract to Phelps and the plans and specifications of the project refer to "Schedule Two Elevated Drive" and "Schedule Three Terminal Building."

coverage of the contract. However, Article I, section 2(d), of the building contract states that work covered by the "Housing Agreement and The Heavy and Highway Agreement" shall not be considered similar to work within the coverage of the building contract for purposes of automatically granting a lower wage scale to any employer under the building contract when another employer has secured a lower wage scale than that provided by the contract.

Section 2(d) of the building contract further states that a Heavy and Highway Agreement "shall be available to any member of the Employer [any member of ABC], who desires to engage in such work, for signature with the Union."

The Heavy and Highway Agreement, which we will refer to as the "highway contract," is the second of two collective bargaining contracts involved in this appeal. The building contract describes work within its jurisdiction in terms of the particular job the employee might perform, e. g., "making and setting of concrete forms," "fitting and hanging of all doors," "making and installing of all acoustic properties." The highway contract describes work within its jurisdiction by the nature of the construction project, e. g., "all work performed in the construction of streets and highways, airports, utilities, levee work," etc.[2] The important fact giving rise to the dispute and leading to this appeal is that the wage scale for carpenters provided in the highway contract is less than the wage scale provided in the building contract.

Although there is no dispute that a substantial part of the entire construction project was within the jurisdiction of the building contract (the terminal buildings), classification of the elevated drive leading to the building entrance as highway work or building work im-

mediately became a source of disagreement between the parties. There is conflicting evidence relating to the understanding of the parties as work commenced; however, for the first four or five weekly pay periods Phelps paid employees working on the elevated drive the lower wage scale provided in the highway contract. After a number of informal discussions, the dispute between Phelps and the union representatives concerning the classification of the elevated drive and applicable wage scales reached a critical point in the week of July 24, 1964.

On July 23 Phelps mailed to the union a Heavy and Highway Agreement for union signature, as provided in section 2(d) of the building contract. The union received the agreement on July 24, but did not sign it. On July 24 a formal meeting was convened between the union representatives and representatives of ABC, the contractors' association, pursuant to Article VIII, section 1, of the building contract, which provides: "The said committees are charged with the responsibility of reaching a settlement by mediation, conciliation or arbitration as the circumstances require; the decision so reached shall be put in writing and shall be binding on all parties to the controversy." The foregoing excerpt is the extent of the procedure for resolving disputes under the building contract. A vote taken at the meeting resulted in a deadlock. The union considered the building wage scale applicable to the elevated drive, and the contractors considered the highway wage scale applicable.

After the meeting was adjourned on July 24, the union advised Phelps that unless Phelps agreed to pay building wages on the elevated drive, the union would inform its members that they were receiving substandard wages. It was

2. The *highway* contract defines building construction as "building structures, including modifications thereto or additions or repairs thereto, intended for use as shelter, protection, comfort or convenience * * * No structures such as * * * bridges * * *, forming a part of a highway, which are required under the provisions of a highway construction contract, shall be regarded as constituting building work."

understood that such advice would result in a walkout or work stoppage. Phelps would not agree to pay building wages, but did offer to place the amount represented by the difference between highway and building wages in escrow pending a final determination of the issue. The union declined this offer, and advised its members that Phelps was paying substandard wages, and the carpenters walked out. Work was resumed in two days, after Phelps agreed to pay building wages, but reserved all rights under the building contract pending a final determination of the issue.[3]

Phelps thereafter brought this suit against the union for breach of contract, seeking recovery of the difference between highway and building wages paid, and other damages.

The trial court found that the building contract meeting of July 24, which resulted in a deadlock, had exhausted the dispute procedure set forth in such contract. The trial court found that the ramp construction was highway work, and that the highway contract was operative. It also found that the dispute procedure set forth in the highway contract was different from that established in the building contract, and that the union had not complied with its contract dispute procedure before causing a work stoppage.[4]

From the foregoing findings, the trial court concluded that the parties were bound by the provisions of both the building and highway contracts, and that the dispute concerned the application of the highway contract to the elevated drive. Thus the union was required to comply with the dispute procedure of both the highway contract and the building con-

tract. The court concluded that the union had failed to comply with the dispute procedure of the highway contract; that the highway contract was breached by the work stoppage, and Phelps was entitled to recover damages in the amount of the building wage scale paid for highway work.

■ This appeal is under the provisions of § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, and federal substantive law applies. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580; John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898. Although we have been referred to no case concerned with issues quite like those presented in the case at bar, the Supreme Court has established a broad policy for judicial interpretation of collective bargaining contracts. The Court has stated: "[W]e think special heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve." United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403. "The collective agreement covers the whole employment relationship. It calls into being a new common law * * *." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409. The Court has also held that in the context of collective bargaining contracts, preoccupation with the doctrines of ordinary contract law may thwart realization of congressional policy. Cf. United Steelworkers of America v. American Manufacturing Co., supra.

3.  It also appears that Phelps made retroactive payments for the first four or five weekly pay periods for which the highway scale had been paid.

4.  The highway contract sets forth its dispute procedure in some detail, but representatives for the union and the contractors, for purposes of a meeting to resolve a dispute, are different than those designated by the building contract. Article VII of the highway contract provides:

"If the Joint Committee is unable or unwilling to render a decision because of deadlock vote or otherwise, thereafter the Employer and the Union shall be free to pursue whatever other legal rights and remedies they may have." The highway contract expressly prohibits work stoppage by either side until the joint committee has, or has not, reached a decision, but neither party is bound to abide the decision of the joint committee.

These policies are of course difficult to apply to a particular factual situation such as we have before us. We can examine however the purpose for which the agreements were intended to serve, the fact that they are intended to cover as great a portion of the parties' relationships as possible, and that all the doctrines of contract law may not be applicable.

This dispute originated during the course of work under a particular agreement, the building contract, and all negotiations and procedures were initially taken pursuant to it. The employees' pay was initially made at a different scale, but with no indication that a different agreement would be invoked in its entirety. The dispute was treated by the parties as one over an applicable pay scale under a single contract, and the court should treat it in the same way. There was no disagreement as to the hourly rate if the nature of the work was decided. Thus again it was treated by all concerned as a dispute over which of two wage scales should apply.

We hold that the judgment of the trial court must be affirmed, but we cannot agree with the trial court's conclusion of law that the parties were bound to comply with the dispute procedures of both the building contract and the highway contract.

As indicated above, the disagreement between the parties centered about one issue. Was the elevated drive building work, or was it highway work? The contents of the contracts in question cannot be considered separately from the unusual nature of the dispute in the case at bar. Unlike the facts of most cases to which we have been referred, the dispute here is fundamental, for it questions which of two contracts should apply to the elevated drive. Until the underlying question of fact was determined, that is, classification of the elevated drive as building or highway work, the parties could not know which wage scale to use. Although the trial court concluded that the dispute concerned application of the highway contract to the elevated drive, the dispute was concerned equally with application of the building contract to the elevated drive.

Review of the record satisfies us that the parties regarded the dispute as one arising under the building contract. It appears that work on the airport project was commenced under the building contract, though the parties never agreed on the classification of the elevated drive. A substantial part of the airport project was within the jurisdiction of the building contract, and the building contract, in Article I, section 2(d), provides that a highway contract, for signature with the union, shall be available to any contractor desiring to engage in highway work. The meeting of July 24 was convened pursuant to the dispute procedure established in the building contract, and Phelps sought to invoke the highway contract in the manner provided in the building contract.

When Phelps sought to put into effect the highway contract under section 2(d) of the building contract, the dispute had long before focused on the classification of the elevated drive. It could not invoke the highway contract for building work, and thus the "jurisdictional" question still remained as before. Phelps' action in executing the highway contract was no more than a further assertion of its position in the dispute. Neither "party" to the highway contract could be the sole judge of whether the project was within the jurisdiction of the highway contract. Such an interpretation would be inconsistent with the efforts of the union and the contractors to establish comprehensive definitions of building work and highway work in the contracts.

In the case at bar, the union did not agree that the elevated drive was highway work. The basic issue was unchanged by the action of Phelps. The dispute was thus in fact still proceeding under the building contract. The union could not under such circumstances breach the highway contract by causing a work stoppage. The highway contract thus never came into existence, and the union cannot be required to exhaust

its dispute procedure. Cf. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347; United Mine Workers of America, Dist. 22 v. Roncco, 314 F.2d 186 (10th Cir.).

■ The dispute procedure established in the building contract is rudimentary. Beyond the requirement of a meeting between the parties, the dispute provisions in the building contract provide for no further procedure for a binding resolution of the dispute, short of a strike, a lockout, or a law suit. While the dispute procedure does charge the parties to reach a settlement by "mediation, conciliation or arbitration as the circumstances require," no machinery is provided by which any of the foregoing alternatives might be implemented to achieve the "binding decision" envisioned by the dispute procedure. The parties do not assert that any procedure, beyond the meeting, was required by the language of the contract, and it appears that the language of the contract is inadequate to compel the parties to resort to additional extrajudicial procedures. Cf. United Steelworkers of America (AFL-CIO), etc. v. New Park Mining Co., 273 F.2d 352 (10th Cir.).

■ A failure to agree that disputes shall be resolved by binding arbitration permits the parties to resort to other remedies such as work stoppages, lockouts, or the courts. Compliance with the dispute procedure of the building contract was effected by the meeting of July 24, which resulted in a deadlock. The contract does not contain a "no strike" clause, and, as we have seen, it does not provide for binding and compulsory arbitration. Thus after the contractual dispute procedure proved ineffective to resolve the dispute, the parties were free to pursue their other remedies. The device selected by the union was a work stoppage. Phelps later has sought its remedy in the United States District Court. With different facts the forums selected could be reversed, Phelps imposing a lockout and the union bringing suit.

■ The union argues that the merits of the dispute concerning classification of the elevated drive were "matters which the parties left to mutual confidence and to their joint committees to work out, if possible, when problems should arise"; and therefore, the trial court erred by finding that the elevated drive was "highway construction within the meaning and intent" of the highway contract. We cannot accept this analysis of the trial court's limited role in adjudicating disputes arising under a collective bargaining contract. Federal policy, as revealed by § 301 of the Labor Management Relations Act, undoubtedly favors arbitration as the method for resolving disputes arising under collective bargaining contracts. United Steelworkers of America v. Warrior & Gulf Navigation Co., supra; Local 174 Teamsters, Chauffeurs, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593. In the case at bar however the contract does not provide for binding arbitration, and resort to the court was proper.

■■ The contracts in question reveal a joint effort of the union and the contractors to define and classify construction projects as building or highway work for purposes of determining the appropriate wage scale. Classification of a particular construction project is not beyond the scope of the contracts in question, nor is such classification beyond the contractual intent of the parties. The dispute here concerned interpretation and construction of the contracts, and the trial court properly adjudicated the dispute on its merits. When the dispute is one arising within the provisions of the contract, it is the function of the courts, under § 301, to adjudicate the dispute, absent provisions in the contract for binding arbitration. See Line Drivers Local No. 961, etc. v. W. J. Digby, Inc., 341 F.2d 1016 (10th Cir.); United Steelworkers of America (AFL-CIO), etc. v. New Park Mining Co., 273 F.2d 352 (10th Cir.); cf. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462; Smith v. Evening News Ass'n, 371 U.S. 195, 83

S.Ct. 267, 9 L.Ed.2d 246; Brown v. Sterling Aluminum Products Corp., 365 F.2d 651 (8th Cir.). See also Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

■ Although the record reveals conflicting evidence relating to classification of the elevated drive, we are satisfied that there was substantial evidence to support the trial court's finding that the elevated drive was highway construction. Rule 52, Fed.R.Civ.Proc.; J. A. Tobin Construction Co. v. United States, 343 F.2d 422 (10th Cir.); State Farm Mutual Automobile Ins. Co. v. Lehman, 334 F.2d 437 (10th Cir.). The union caused Phelps to pay building wages for highway construction which was a breach of the building contract, and the union is liable to Phelps for damages.

■ The record discloses that Phelps claimed $9,327.00 in actual damages. The trial court awarded judgment for $8,000.00, finding that Phelps had paid to carpenters working on the elevated drive "not less than $8,000.00 in excess of that which the plaintiff [Phelps] would have been obligated to pay" if the highway contract had been applicable. We are satisfied that there was substantial evidence upon which the trial court could find that a sum not less than $8,-000.00 would compensate Phelps for excessive wages paid, and we cannot say that such finding is clearly erroneous.

The judgment is affirmed.

On Petition for Rehearing.

The appellants' petition for rehearing is denied. Our opinion is modified as follows: The judgment of the District Court is affirmed with respect to appellant, United Brotherhood of Carpenters & Joiners of America, Carpenters District Council of Denver and Vicinity, and the judgment of the District Court is reversed with respect to appellant, United Brotherhood of Carpenters & Joiners of America, AFL–CIO, Colorado State Council of Carpenters Its Affiliated District Councils and Affiliated Local Unions. The District Court's amended judgment dismissed the action against the individual defendants, Leslie Prickett, Adolph LaValle, and James McFarland. These individuals were erroneously listed as appellants in this court.