GROVES ET AL. *v.* RING SCREW WORKS, FERNDALE
FASTENER DIVISION

No. 89–1166.   Argued October 10, 1990—Decided December 10, 1990

STEVENS, J., delivered the opinion for a unanimous Court.

*Laurence Gold* argued the cause for petitioners.   With him
on the briefs were *Jordan Rossen* and *George Kaufmann*.

*Terence V. Page* argued the cause for respondent. With him on the brief was *Richard M. Tuyn.**

JUSTICE STEVENS delivered the opinion of the Court.

The collective-bargaining agreements between the parties provide for voluntary grievance procedures and reserve the parties' respective rights to resort to economic weapons when the procedures fail to resolve a dispute. The collective-bargaining agreements are silent as to judicial remedies. The question presented is whether, upon failure of the grievance procedures, such contracts should be construed to bar recourse to the courts under § 301 of the Labor Management Relations Act, 1947 (LMRA), 61 Stat. 156, 29 U. S. C. § 185. We granted certiorari to resolve a conflict in the Circuits,[1] 494 U. S. 1026 (1990), and we now conclude that the judicial remedy under § 301 is available to petitioners.

I

Two almost identical collective-bargaining agreements (CBA's) between respondent Ring Screw Works (company) and the union[2] prohibit discharges except for "just cause."

---

*Briefs of *amici curiae* urging affirmance were filed for the Chamber of Commerce of the United States by *Robin S. Conrad;* and for the Motor Vehicle Manufacturers Association of the United States, Inc., by *James D. Holzhauer, Stephen M. Shapiro, William H. Crabtree,* and *Edward P. Good.*

[1] Compare *Fortune* v. *National Twist Drill & Tool Division, Lear Siegler, Inc.,* 684 F. 2d 374 (CA6 1982), and *Haynes* v. *United States Pipe and Foundry Co.,* 362 F. 2d 414 (CA5 1966), with *Associated General Contractors of Illinois* v. *Illinois Conference of Teamsters,* 486 F. 2d 972 (CA7 1973); *Dickeson* v. *DAW Forest Products Co.,* 827 F. 2d 627 (CA9 1987); *United Brotherhood of Carpenters & Joiners of America* v. *Hensel Phelps Construction Co.,* 376 F. 2d 731 (CA10), cert. denied, 389 U. S. 952 (1967), and *Breish* v. *Ring Screw Works,* 397 Mich. 586, 248 N. W. 2d 526 (1976).

[2] Local 771, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), is one of the three petitioners and serves as collective-bargaining agent for the two employee petitioners, Arthur Groves and Bobby J. Evans.

Petitioners Groves and Evans contend that they were discharged in violation of this provision.

Both CBA's provide that the parties will make "an earnest effort" to settle every dispute that may arise under the agreement. App. 16. Both CBA's also contain a voluntary multistep grievance procedure, but neither includes a requirement that the parties submit disputes to binding arbitration.[3] The CBA's prohibit strikes or lockouts until the grievance machinery has been exhausted. The no-strike clause provides:

> "The Union will not cause or permit its members to cause, nor will any member of the Union take part in any strike, either sit-down, stay-in or any other kind of strike, or other interference, or any other stoppage, total or partial, of production at the Company's plant during the terms of this agreement *until all negotiations have failed through the grievance procedure set forth herein.* Neither will the Company engage in any lock-

---

[3] Thus, one CBA provides, in part:

"Section 1. Should a difference arise between the Company and the Union or its members employed by the Company, as to the meaning and application of the provisions of the agreement, an earnest effort will be made to settle it as follows:

"Step 1. Between the employee, his steward and the foreman of his department. If a satisfactory settlement is not reached, then

"Step 2. Between the Shop Committee, with or without the employee, and the Company management. If a satisfactory settlement is not reached, then

"Step 3. The Shop Committee and/or the Company may call the local Union president and/or the International representative to arrange a meeting in an attempt to resolve the grievance. If a satisfactory settlement is not reached, then

"Step 4. The Shop Committee and the Company may call in an outside representative to assist in settling the difficulty. This may include arbitration by mutual agreement in discharge cases only." App. 16–17.

out until the same grievance procedure has been carried out." *Id.*, at 34 (emphasis added); see *id.*, at 69.[4]

The dispute in this case arose out of the company's decision to discharge petitioners.[5] With the assistance of the union, petitioners invoked the grievance procedures, but without success.[6] At the end of the procedures, the company decided not to call for arbitration, and the union decided not to exercise its right to strike.[7] Instead, petitioners filed this action invoking federal jurisdiction under § 301, 29 U. S. C. § 185.

Following the Sixth Circuit's decision in *Fortune* v. *National Twist Drill & Tool Division, Lear Siegler, Inc.*, 684 F. 2d 374 (1982), the District Court granted the company's motion for summary judgment and the Court of Appeals affirmed. 882 F. 2d 1081 (1989). The Sixth Circuit explained:

"We believe that the CBA's in question do bring about an inference that a strike, or other job action, is the perceived remedy for failure of successful resolution of a grievance absent agreed arbitration. Such resolution, by work 'stoppage or other interference' is not a happy solution from a societal standpoint of an industrial dispute, particularly as it relates to the claim of a single em-

---

[4] One of the CBA's contained the following provision:

"Unresolved grievance (except arbitration decisions) shall be handled as set forth in Article XVI, Section 7." *Id.*, at 53.

The referenced provision is the no-strike clause. There has been no claim at any stage of this litigation that this provision justifies a different interpretation of the two otherwise almost identical CBA's.

[5] The company terminated petitioner Groves for allegedly excessive, unexcused absences and dismissed petitioner Evans for allegedly falsifying company records.

[6] There is no dispute that the grievance procedures were properly followed and that the union fairly represented petitioners.

[7] In Evans' case, a strike vote was taken by the unit members at the plant at which he worked, but the issue did not receive the required two-thirds majority; in Groves' case, a strike vote was never taken.

ployee that he has been wrongfully discharged. Were we deciding the issue with a clean slate, we might be disposed to adopt the rationale of *Dickeson* [v. *DAW Forest Products Co.*], 827 F. 2d 627 [(CA9 1987)]." 882 F. 2d, at 1086.[8]

## II

Section 301(a) of the LMRA provides a federal remedy for breach of a collective-bargaining agreement.[9] We have squarely held that § 301 authorizes "suits by and against individual employees as well as between unions and employers," including actions against an employer for wrongful discharge. *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S. 554, 562

---

[8] The Sixth Circuit relied on its reasoning in *Fortune*, as restated in subsequent opinions:

"'This circuit has concluded, in essence that regardless of whether the contractual dispute resolution mechanism results in a 'final and binding' decision, the existence of that mechanism will foreclose judicial review provided we find that it was intended to be exclusive. . . .

"'While we may question the wisdom of foreclosing judicial review of contracts which fail to provide for either 'final' or 'binding' peaceful resolution via arbitration, since the absence of such a provision cannot be taken to infer that the union (and thereby its employees) gained anything in its contract negotiations as a result, it is nevertheless well established in this circuit that a panel of this court is bound by the prior decisions of another panel of the same issues.'

"*Mochko* v. *Acme-Cleveland Corp.*, 826 F. 2d 1064 (6th Cir. 1987) (unpublished per curiam)." 882 F. 2d, at 1086.

Given the panel's expressed doubt about the correctness of the Circuit precedent that it was following, together with the fact that there was a square conflict in the Circuits, it might have been appropriate for the panel to request a rehearing en banc.

[9] Section 301(a) of the LMRA, 61 Stat. 156, provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U. S. C. § 185(a).

(1976). Our opinion in *Hines* described the strong federal policy favoring judicial enforcement of collective-bargaining agreements. We wrote:

> "Section 301 of the Labor Management Relations Act . . . reflects the interest of Congress in promoting 'a higher degree of responsibility upon the parties to such agreements . . . .' S. Rep. No. 105, 80th Cong., 1st Sess., 17 (1947). The strong policy favoring judicial enforcement of collective-bargaining contracts was sufficiently powerful to sustain the jurisdiction of the district courts over enforcement suits even though the conduct involved was arguably or would amount to an unfair labor practice within the jurisdiction of the National Labor Relations Board. *Smith* v. *Evening News Assn.*, 371 U. S. 195 (1962); *Atkinson* v. *Sinclair Rfg. Co.*, 370 U. S. 238 (1962); *Teamsters* v. *Lucas Flour Co.*, 369 U. S. 95 (1962); *Charles Dowd Box Co.* v. *Courtney*, 368 U. S. 502 (1962). Section 301 contemplates suits by and against individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge. *Smith* v. *Evening News Assn., supra*, at 198–200. Petitioners' present suit against the employer was for wrongful discharge and is the kind of case Congress provided for in § 301." *Id.*, at 561–562.

Thus, under § 301, as in other areas of the law, there is a strong presumption that favors access to a neutral forum for the peaceful resolution of disputes.

The company correctly points out, however, that a presumption favoring access to a judicial forum is overcome whenever the parties have agreed upon a different method for the ad-

justment of their disputes.[10]   The company argues that the
union has agreed that if the voluntary mediation process is
unsuccessful, then the exclusive remedy that remains is
either a strike or a lockout, depending on which party asserts
the breach of contract.   According to this view, the dispute
is not whether there was "just cause" for the discharge of
Groves and Evans, but whether the union has enough muscle
to compel the company to rehire them even if there was just
cause for their discharge.

In our view, the statute's reference to "the desirable
method for settlement of grievance disputes," see n. 10,
*supra*, refers to the peaceful resolution of disputes over the
application or meaning of the collective-bargaining agree-
ment.[11]   Of course, the parties may expressly agree to resort
to economic warfare rather than to mediation, arbitration, or
judicial review, but the statute surely does not favor such an
agreement.   For in most situations a strike or a lockout,
though it may be a method of ending the impasse, is not a
method of resolving the merits of the dispute over the appli-
cation or meaning of the contract.   Rather, it is simply a
method by which one party imposes its will upon its adver-
sary.   Such a method is the antithesis of the peaceful meth-
ods of dispute resolution envisaged by Congress when it
passed the LMRA.[12]

---

[10] Section 203(d) of the LMRA provides:

"Final adjustment by a method agreed upon by the parties is declared to
be the desirable method for settlement of grievance disputes arising over
the application or interpretation of an existing collective-bargaining agree-
ment."   29 U. S. C. § 173(d).

[11] As we explained in *Steelworkers* v. *Warrior & Gulf Navigation Co.*,
363 U. S. 574 (1960):

"The processing of disputes through the grievance machinery is actually a
vehicle by which meaning and content are given to the collective bargain-
ing agreement."   *Id.*, at 581.

Here, the parties' dispute centers on the question whether there was just
cause for the discharges.

[12] "If unions can break agreements with relative impunity, then such
agreements do not tend to stabilize industrial relations.   The execution of

In *Associated General Contractors of Illinois* v. *Illinois Conference of Teamsters*, 486 F. 2d 972 (1973), the United States Court of Appeals for the Seventh Circuit was confronted with the same issue presented by this case, albeit with the union, rather than the employer, claiming that the contractual provision foreclosed judicial relief. The Seventh Circuit, in response to the union's argument that the CBA's terms provided that deadlocked grievances would be resolved by economic sanctions without resort to the courts, wrote:

> "Unquestionably 'the means chosen by the parties for settlement of their differences under a collective bargaining agreement [must be] given full play.' See *United Steelworkers of America* v. *American Mfg. Co.*, 363 U. S. 564, 566 [(1960)]. But it is one thing to hold that an arbitration clause in a contract agreed to by the parties is enforceable. It is quite a different matter to construe a contract provision reserving the Union's right to resort to 'economic recourse' as an agreement to divest the courts of jurisdiction to resolve whatever dispute may arise. This we decline to do.
>
> "In our first opinion in this case we noted that the parties had not agreed to compulsory arbitration and that the Union had expressly reserved the right to 'economic recourse' in the event of a deadlock. We therefore held that the . . . right to strike was protected by the Norris-LaGuardia Act. However, we did not, and do not now, construe the agreement as requiring economic warfare as the exclusive or even as a desirable method for settling deadlocked grievances. The plain language of the

---

an agreement does not by itself promote industrial peace. The chief advantage which an employer can reasonably expect from a collective labor agreement is assurance of uninterrupted operation during the term of the agreement. Without some effective method of assuring freedom from economic warfare for the term of the agreement, there is little reason why an employer would desire to sign such a contract." S. Rep. No. 105, 80th Cong., 1st Sess., p. 16 (1947).

> statute protects the right to strike, but there is no plain language in the contract compelling the parties to use force instead of reason in resolving their differences. In our view, an agreement to forbid any judicial participation in the resolution of important disputes would have to be written much more clearly than this." *Id.*, at 976 (footnote omitted).

This reasoning applies equally to cases in which the union, an employee, or the employer is the party invoking judicial relief.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*