**Wilfred FARLEY, Plaintiff,**

**v.**

**SHAW'S SUPERMARKETS, INC., Defendant.**

**Civil Action No. 06–11480–NMG.**

United States District Court, D. Massachusetts.

June 7, 2007.

Terence E. Coles Pyle, Rome & Lichten, P.C., Boston, MA, for Plaintiff.

Robert P. Morris Morgan, Brown & Joy, LLP, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

This case involves an insurance benefits dispute. The plaintiff, Wilfred Farley ("Farley"), is seeking the recovery of approximately $700 in additional compensation from his employer, Shaw's Supermarkets, Inc. ("Shaw's"), pursuant to provisions in the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Pending before the Court is a motion to dismiss of defendant Shaw's.

### I. *Background*

Farley is a full-time employee of Shaw's and a member of Local 791, United Food and Commercial Workers Union ("Local 791"). Shaw's and Local 791 are parties to a collective bargaining agreement ("the CBA") which contains a provision for medical insurance (hereinafter referred to as "Article 10"). The CBA also provides that full-time employees such as Farley may opt-out of the insurance plan and receive additional payroll compensation in lieu of medical insurance coverage and contribution.

In October, 2005, Farley elected to participate in Shaw's opt-out plan and, thus, received additional payroll compensation of approximately $50 per week. On February 18, 2006, Shaw's ended Farley's participation in the opt-out plan and ceased paying the additional compensation. In his Complaint, Farley alleges that Shaw's provided no explanation or notification for the termination of compensation. Furthermore, he alleges that Shaw's informed him that because he chose the opt-out plan, he is prohibited from ever receiving medical insurance coverage for his severely mentally-retarded daughter.

On August 21, 2006, Farley filed a Complaint against Shaw's seeking recovery of the approximately $50 per week additional compensation which Shaw's allegedly owes him. Pending before the Court is a motion of defendant Shaw's to dismiss all counts directed against it for lack of subject matter jurisdiction and the plaintiff's failure to state a claim.

### II. *Motion to Dismiss*

#### A. Legal Standards

Pursuant to Fed.R.Civ.P. 12(b)(1), a defendant may move to dismiss an action against him for lack of subject matter jurisdiction. The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995). In assessing the motion, the court must "construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff[ ]". *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir.1998) (citation omitted). In resolving any factual disputes regarding the existence of jurisdiction, a court may review any evidence, including any submitted affidavits and depositions. *See Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir.1996).

A court may not dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell*, 160 F.3d 67, 72 (1st Cir.1998)(quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters

of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000), aff'd, 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See *Nollet*, 83 F.Supp.2d at 208.

### B. Analysis

#### 1. Labor Management Relations Act

Count One of the Complaint alleges a violation of the CBA between Shaw's and Local 791 pursuant to Section 301 of the LMRA. Defendant Shaw's contends that the CBA includes no express provision for judicial review and, therefore, the Court has no jurisdiction. Not surprisingly, Farley vigorously disputes that contention.

■ The Court begins its analysis with the statutory language. Section 301 of the LMRA states that:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). That provision provides federal jurisdiction in cases alleging breach of a collective bargaining agreement and authorizes suits by (as well as against) individual employees as well as between unions and employers. *See Groves v. Ring Screw Works*, 498 U.S. 168, 172–73, 111 S.Ct. 498, 112 L.Ed.2d 508 (1990)(noting "the strong federal policy favoring judicial enforcement of collective-bargaining agreements")(citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)).

In the instant case, Article 10 of the CBA, which covers the various medical benefits, dental benefits, life insurance and pension coverages, provides that Farley is

eligible for medical insurance provided by the [United Food & Commercial Workers National Health & Welfare Fund] . . . . [and] may take advantage of the Employer's opt out plan for medical insurance coverage [and] receive additional payroll compensation in lieu of medical insurance coverage and contribution on the same terms and conditions as non-bargaining unit employees.

In this case, Farley elected the opt-out plan and received approximately $50 per week of additional payroll compensation. He alleges that those payments were curtailed, without explanation or notification, in violation of the CBA.

■ The central issue in this pending motion to dismiss is whether Farley is able to seek judicial review in federal court for that alleged breach of contract. Article 13 of the CBA outlines detailed procedures for grievance and arbitration and states that those procedures are "intended to be the *sole means* for resolution of grievances". (emphasis added). That said, Article 10, which outlines the Insurance–Pension benefits, specifically states that:

Neither of the provisions of this Article [10] nor any question as to the application or interpretation of any of said programs may be made the subject of a grievance or be arbitrable under this Agreement [the CBA]. . . .

Both parties agree that Farley's claim is not subject to the grievance and arbitration procedures outlined in Article 13. The parties diverge, however, on the issue

of what, if any, remedy remains available to him.

In its argument, Shaw's implies that Farley is circumventing proper procedure by "seeking to proceed directly to [the] Court on a claim under the [CBA]". Shaw's contends that the parties intended to foreclose all remedies in this case because 1) the grievance and arbitration procedures were intended to be the "sole means" of resolving contract disputes, 2) Article 10 grievances are expressly exempt from that procedure and 3) the CBA provides no express alternative means for resolving a contractual dispute under Article 10. Farley disagrees and contends that it is exactly in cases such as this where the agreement lacks a provision for arbitration or some other method for final resolution that relief in federal court is statutorily permitted. The Court agrees.

The United States Supreme Court has long recognized that district courts have subject matter jurisdiction in a dispute over an employee's rights under a collective bargaining agreement in the absence of an agreement for arbitration or some other form of final resolution. 29 U.S.C. § 185(a); *see also Local 369, Utility Workers Union of America, AFL–CIO v. Boston Edison Co.*, 588 F.Supp. 800, 804 (D.Mass.1984)(holding that judicial is review available "[i]n the absence of an agreement for arbitration or some other form of final resolution of a dispute"), *aff'd*, 752 F.2d 1 (1st Cir.1984). Generally, the availability of judicial review requires first the exhaustion of any grievance or arbitration procedures in the agreement prior to seeking recourse in the courts. *See, e.g. Vaca v. Sipes*, 386 U.S. 171, 186–87, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)(citing instances in which an employee can bring an action despite failing to exhaust contractual remedies); *Smith v. Evening News Assn.*, 371 U.S. 195, 196 n. 1, 83 S.Ct. 267,

9 L.Ed.2d 246 (1962)(noting the lack of grievance arbitration procedures which would have to be exhausted prior to seeking judicial recourse).

In this case, the CBA expressly exempts disputes arising under Article 10 from any and all grievance and arbitration procedures. Thus, while disputes arising under other provisions would have to be exhausted pursuant to the procedures outlined in the CBA, no such procedural prerequisites exist with respect to Article 10 disputes. The defendant erroneously contends that the CBA must expressly provide for federal judicial review. That interpretation is supported by neither the case law nor the plain language of the statute.

In support of its position, the defendant mistakenly relies on a recent opinion from another session of this Court which interpreted a similar collective bargaining agreement. *Local 791, United Food and Commercial Workers Union, AFL–CIO, v. Shaw's Supermarkets, Inc.*, No. 05–10841 (D.Mass. Aug. 30, 2006)(order allowing defendant's motion for judgment on the pleadings). In that case, Judge Lindsay entered judgment for the defendant after concluding that, because the provision at issue stated that disputes "shall not be subject to arbitration" but was silent on the grievance procedure, the plaintiffs were not entitled to "skip the grievance procedure and proceed to court". Article 10 of the CBA, the provision at issue in this case, is clearly distinguishable because it states that disputes are excluded from the grievance procedure and arbitration. Accordingly, there are no procedures which must be exhausted before proceeding to court with respect to Article 10 grievances *and*, therefore, the plaintiff permissibly filed this suit pursuant to section 301 of the LMRA.

## 2. Employee Retirement Income Security Act

Count Two of the Complaint alleges that the defendant arbitrarily and capriciously denied Farley additional compensation to which he was entitled, in violation of ERISA, 29 U.S.C. § 1132. The defendant contends that the opt-out plan under the CBA does not constitute an "employee welfare benefit plan" and there is, therefore, no remedy under ERISA to recover the payments sought by Farley.

Once again, the Court begins with the statutory language which provides that a participant of an employee welfare benefit plan can bring a suit:

> to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). The statute defines an "employee welfare benefit plan" as:

> [a]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise. . . .

29 U.S.C. § 1002(1).

Both parties agree that the National Health and Welfare Fund provided for in the CBA qualifies as an "employee welfare benefit plan" under ERISA. The issue is whether the opt-out provision which entitles Farley to receive additional payroll compensation in lieu of medical insurance coverage also qualifies as an employee welfare benefit plan. Farley contends that the CBA's medical insurance plan includes

the opt-out provision and, therefore, such payments received by electing that option should similarly be protected under ERISA. Shaw's disagrees and contends that the additional payroll compensation benefits fall outside of the scope of ERISA.

■ Courts have struggled to determine what constitutes an "employee welfare benefit plan" under ERISA. The Supreme Court specifically noted the importance of looking at the purpose of the statute because "the terms 'employee benefit plan' and 'plan' are defined only tautologically in the statute". *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). Congress enacted ERISA in 1974 to "safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." *Massachusetts v. Morash*, 490 U.S. 107, 112, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). Thus, in divining whether a particular "plan" is covered under ERISA, the Supreme Court has held that courts must look to whether the structure of the "plan" presents a risk of such abuse or mismanagement.

■ Specifically, the Court noted that the distinguishing feature of benefit plans subject to ERISA regulation is that they "accumulate over time and are payable only upon the occurrence of a contingency outside of the control of the employee." *Id.* at 115–16, 109 S.Ct. 1668. For example, a policy to pay employees for unused vacation time is

> not treated as employee benefit plans because they are associated with regular wages or salary, rather than benefits triggered by contingencies such as hospitalizations.

*Id.* at 115–17, 109 S.Ct. 1668 (citation omitted). The First Circuit Court of Appeals has also considered additional factors such as the discretion exercised by an employer in handling the plan's funds and the number of payments required by the plan. *See, e.g., O'Connor v. Commonwealth Gas Co.,* 251 F.3d 262, 266–67 (1st Cir.2001).

█ In this case, Farley received additional compensation in his weekly payroll after he opted out of the CBA's medical insurance plan. He does not allege that Shaw's created a separate fund from which those additional payments were taken or that Shaw's played a role in managing those additional payments. Rather, such payments were clearly associated with his regular weekly wages and were not contingent upon some future occurrence which would trigger their pay out. ERISA was intended to provide oversight against risk of abuse or mismanagement of funds accumulated by an employer; there is no evidence that Shaw's had any administrative oversight of such accumulated funds. Therefore, the opt-out provision is not part of a benefit plan nor is it covered by ERISA.

### ORDER

For the foregoing reasons, the motion to dismiss of defendant Shaw's Supermarkets, Inc. (Docket No. 4) is, with respect to Count One, **DENIED,** but is, with respect to Count Two, **ALLOWED.**

**So ordered.**