NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0325n.06

No. 09-3837

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 28, 2010**
LEONARD GREEN, Clerk

GARY Z. LYON,                                   )
                                                )
    Plaintiff-Appellant,                         )
                                                )
v.                                              )   ON APPEAL FROM THE UNITED
                                                )   STATES DISTRICT COURT FOR
YELLOW TRANSPORTATION, INC.;                    )   THE SOUTHERN DISTRICT OF
TEAMSTERS LOCAL 413, INTERNATIONAL              )   OHIO
BROTHERHOOD OF TEAMSTERS,                        )
CHAUFFEURS, WAREHOUSEMEN AND                    )
HELPERS OF AMERICA,                             )
                                                )
    Defendants-Appellees.                        )

Before: MARTIN, CLAY, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. After Gary Lyon was laid off from his position as a truck driver for Yellow Transportation, Inc., he filed a grievance contending that Yellow had violated his seniority rights under its collective bargaining agreement with his union, Local 413 of the Teamsters. The union initially pressed the grievance, but ultimately withdrew it. Lyon then filed this "hybrid" lawsuit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, claiming that Yellow had breached the collective bargaining agreement and that Local 413 had breached its duty of fair representation by mishandling his grievance. The district court granted summary judgment in favor of both defendants. We affirm.

I.

When Yellow downsized its Columbus, Ohio terminal in July 2007, some of the jobs lost there were replaced by new ones elsewhere. Pursuant to an agreement between Yellow and Local 413, the employees at the Columbus facility had priority in filling the new positions. In particular, the employee with the most seniority within a job classification could choose to fill one of the new positions by placing a "bid" on it. He could also choose to "pass," allowing him to stay in one of the positions that remained in Columbus after the downsizing. The other employees then did the same in order of seniority. Because the new positions did not fully make up for those lost in Columbus, however, it was inevitable that some employees would be laid off.

Lyon, who had been employed by Yellow as an over-the-road truck driver since 1999, hoped to transfer to Yellow's Atlanta terminal. By the time his turn came, however, the last Atlanta position had been filled. Although there were still open jobs at other locations, Lyon placed a "hold" on a position in Atlanta, which would have allowed him to transfer there if a new position opened up within a certain time after the bidding process concluded. But none did, so Lyon was laid off.

Shortly thereafter, Lyon filed a grievance against Yellow, alleging that the employee who filled the last Atlanta vacancy, D.S. Miller, did not have valid seniority as an over-the-road driver and thus should not have been permitted to bid ahead of him. According to the grievance, Miller's bid was a nullity, and Lyon should have been permitted to fill the last Atlanta position as a result of the hold he had placed. Local 413 initially pressed Lyon's grievance by presenting it to the local grievance committee, composed of representatives from Local 413 and Yellow management. The local committee deadlocked, and the grievance was referred to a state-level committee for a hearing.

Before the hearing, however, Local 413 concluded that Lyon's grievance was meritless and withdrew it.

Lyon thereafter sued Yellow and Local 413, seeking reinstatement from the company and damages from both defendants. In his complaint, Lyon alleged that Yellow breached the collective bargaining agreement by permitting Miller to bid as an over-the-road driver. He also alleged that Local 413 had violated its duty of fair representation by arbitrarily withdrawing his grievance without giving him notice beforehand.

After discovery, the parties cross-moved for summary judgment. The district court denied Lyon's motion but granted summary judgment in favor of the defendants, concluding that Yellow had not breached the collective bargaining agreement and that Local 413 had not breached its duty of fair representation.

This appeal followed.

II.

Individual employees may sue for breach of a collective bargaining agreement under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. *See Groves v. Ring Screw Works*, 498 U.S. 168, 173 (1990). But in cases like this one, where the dispute is subject to a mandatory grievance-arbitration process, an employee's failure to exhaust that process precludes him from filing suit. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965). That is so even when the failure to exhaust results from the union's refusal to prosecute a grievance, since the union acts as the employee's representative and is entitled to withdraw a grievance on his behalf. *See Vaca v. Sipes*, 386 U.S. 171, 191-93 (1967).

The "hybrid" § 301 claim that Lyon brings here is an exception to that rule, permitting an employee to set aside the result of the grievance process if he can show a serious breakdown in the union's representation. As a practical matter, a hybrid suit involves two causes of action: one against the employer for breach of the collective bargaining agreement, and a second against the union for breaching the duty of fair representation that has been implied under the National Labor Relations Act, 29 U.S.C. § 151 *et seq. See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). Although an employee may choose to sue one defendant and not the other, the two components of the claim are "inextricably interdependent," *id.* (internal quotation marks omitted), and the employee must prove both in order to recover from either defendant. *See id.* at 165. Thus, Lyon must show not only that Yellow breached the collective bargaining agreement, but also that Local 413 handled his grievance "in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* at 164.

Lyon primarily contends that Miller lacked valid seniority as an over-the-road driver and that, as a result, Yellow breached the collective bargaining agreement when it permitted Miller to bid ahead of him for the Atlanta position. When Yellow hired Miller in 1986, he worked as a city truck driver, picking up freight and dropping it off at customer locations in the Columbus area. In November 1995, he transferred to an over-the-road driver position, driving freight on interstate routes from one terminal to another. The reason for the transfer was medical; a company physician determined that injuries to Miller's arm and shoulder left him unable to continue working as a city driver. The physician's thinking seems to have been that city driving required more "repetitive lifting" because it often involved loading and unloading freight from the truck (though Lyon disputes

that proposition). Under the terms of a local seniority-practice agreement that was itself a component of the collective bargaining agreement, Miller's medical transfer allowed him to retain the seniority he had accumulated as a city driver in his new position as an over-the-road driver, even though Yellow ordinarily maintained separate seniority "boards" for the two job classifications.

Miller's physical condition was reevaluated only sporadically after his medical transfer. Examinations by a company physician in June 1996, June 2003, and January 2007 resulted in determinations that Miller was unable to return to work as a city driver, but he was not examined in between. According to Lyon, this delay between examinations violates a provision of the seniority-practice agreement stating that a medical transferee's physical fitness "shall be re-evaluated no later than six (6) months following his/her date of transfer and, if not sooner qualified for return to the board from which he transferred, at each twelve (12) month period thereafter unless otherwise mutually agreed by the parties hereto and reduced to writing." Relying on another provision of the agreement requiring a medical transferee who "subsequently become[s] physically qualified" to "return to the board from which he transferred," Lyon contends that Miller had no valid seniority as an over-the-road driver and should not have been permitted to bid ahead of him for the over-the-road position in Atlanta.

As an initial matter, the parties dispute the basic premise of Lyon's argument—*i.e.*, that a medical transferee who fails to comply with the one-year deadline for reevaluation automatically loses any seniority rights in the position to which he transferred. But there is no need for us to resolve the dispute, because Miller *was* reexamined in January 2007, less than a year before the

downsizing of the Columbus terminal. At that time, the company physician recommended that he continue as an over-the-road driver.

Lyon's complaint, then, is that the collective bargaining agreement was violated in prior years, when Miller went considerably longer than a year between examinations. But Lyon forfeited his right to challenge those asserted violations. The defendants maintain, and Lyon does not contest, that Yellow posted seniority lists approximately every six months, as required by the collective bargaining agreement. Each list included Miller as an over-the-road driver, well above Lyon in terms of seniority. Lyon never challenged Miller's position on those lists, despite a provision of the collective bargaining agreement staying that "[p]rotest of any employee's seniority date or position on such list must be made . . . within thirty (30) days after such seniority date or position first appears, and if no protests are timely made, the dates and positions posted shall be deemed correct." As a result, the defendants were entitled to treat Miller's position on those lists as correct.

Lyon also urges us to look behind the physician's January 2007 disability determination, citing job descriptions from Yellow's website that he says show that work as an over-the-road driver is not really so different from work as a city driver. According to the descriptions, both over-the-road drivers and city drivers load and unload cargo from company trucks and must be "able to handle bulky, heavy, and cumbersome freight, aided or unaided." If that is so, Lyon asserts, then it was impossible for Miller to be physically disqualified from one job but not the other.

But nothing in the collective bargaining agreement authorized a grievance committee—or a federal court—to set aside the physician's medical judgment. The seniority-practice agreement provided that, in the event of a dispute over a medical transferee's physical qualifications, the

procedures for processing an employee's initial request for a transfer would be invoked. Those procedures in turn provided that "[t]he physical fitness of an employee who proposes to change from one board to the other shall be determined by agreement of a company designated physician and the employee's personal physician." If they could not agree, the physicians would "jointly select a third doctor" and the parties would be "bound by his decision." In sum, these rules envision physicians rendering binding determinations of employees' physical fitness. The evidence that Lyon proffered to contest the company physician's January 2007 fitness determination was thus beside the point.

For these reasons, Lyon failed as a matter of law to demonstrate a breach of the collective bargaining agreement. At the very least, he failed to show that his grievance was so clearly meritorious that Local 413's acted arbitrarily in withdrawing it. *See DelCostello*, 462 U.S. at 164. Summary judgment was thus properly entered against him on his hybrid § 301 claim. *See id.* at 164-65. And although Lyon's complaint also included a handful of other claims directed at the defendants individually, the district court could discern no separate theory that could support liability on these claims, and on that basis granted summary judgment as to them as well. By failing to contest that decision in his appellate briefs, Lyon forfeited any chance of reversal. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005).

The district court's judgment is affirmed.