Terry ALFORD, et al., Plaintiffs,

Jefferson Clay, Alen Davis, Gazelle Watkins (90–1387); and Raymond D. Vargo (89–2424), Plaintiffs–Appellants,

v.

GENERAL MOTORS CORPORATION, a Delaware corporation, Defendant–Appellee.

Nos. 89–2424, 90–1387.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 31, 1991.

Decided Feb. 22, 1991.

and attached at page 49 of the collective bargaining agreement.[1]

In the discussion of this matter, the Corporation advised the Union that the intent of utilizing temporary plant security officers is to fill positions or vacancies that are of a temporary nature and not to take the place of hiring regular plant security officers. Salaried Policy provides that the employment of such temporary security officers is not to extend beyond a *twelve* month period for temporary employees hired on a day-to-day basis. If such assignment is to exceed the limits specified, the employee is to be separated or placed on a regular basis. Additionally, recurring assignments are contrary to the intent of these policies.

If, however, due to unusual circumstances, such employment does exceed *twelve* continuous months, the employee shall thereafter be given preference in the bargaining unit over a new employee to fill a future permanent position or, in the interim, another temporary position.

. . . .

The Corporation advised the Union that if the Union feels there are abuses of these policies, the Corporation will, upon request, meet with the International Union to review the matter.

Plaintiffs all worked in excess of twelve months, each at the same plant and at the same position, without being offered permanent employment by GM. In response to this inaction on the part of GM, plaintiffs timely filed grievances through their union. These grievances were consolidated as joint grievance number JG-2-87. This grievance was processed through each of the four steps of the complaint procedure outlined in the collective bargaining agreement. Pursuant to paragraph 47 of the collective bargaining agreement, the Union further appealed the grievance, seeking a

Lawrence S. Katkowsky (argued), Southfield, Mich., for plaintiffs-appellants.

William B. Balke, Ronald J. Santo (argued), Dykema, Gossett, Spencer, Goodnow & Trigg, Maurice G. Jenkins, M. Beth Sax, General Motors Corp., Office of the General Counsel, Detroit, Mich., for General Motors Corp.

Mark L. Heinen, Gregory, Moore, Jeakle & Heinen, Detroit, Mich., for United Plant Guard Workers of America, Local 114, and International Union, United Plant Guard Workers of America (UPGWA).

Before MARTIN and BOGGS, Circuit Judges, and BELL, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

These cases were consolidated for purposes of appeal as they both arise from the same operative facts and present identical issues for review. Fed.R.App.P. 3(b).

Plaintiffs all were employed by General Motors as temporary "per diem" security guards. As "per diem" security guards, plaintiffs were all members of and represented by the Local 114, United Plant Guard Workers of America. Plaintiffs' employment relationship with GM was governed by the GM-UPGWA 1984 collective bargaining agreement, dated December 4, 1984.

Plaintiffs' eligibility for regular employment was governed by the General Motors salary policy on employment of temporary security officers, dated December 4, 1984,

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1. This policy was contained in a letter attached to the 1984 GM-UPGWA agreement along with a number of other documents. These documents were prefaced with the following language:

**LETTERS**

(The following documents connected with the 1984 GM-UPGWA negotiations are not a part of the National Agreement but have been included in this booklet for information purposes.)

meeting between GM and the Union.[2] This meeting was held on September 27, 1988, without reaching a settlement.

The parties stipulated that in processing grievance JG–2–87 the union did not breach its duty of fair representation to those employees covered by the grievance.

Paragraph 36 of the collective bargaining agreement governs the "finality" of the grievance procedure. It provides, in pertinent part:

(36) There shall be no appeal from an umpire's decision, which will be final or binding on the Union and its members, the employee or employees involved, and the Corporation. The Union will discourage any attempt of its members and will not encourage or cooperate with any of its members in any appeal to any court or Labor Board from the decision of an umpire.

With respect to the processing, disposition and/or settlement initiated under the Complaint Procedure Section of this Agreement, and with respect to any court action claiming or alleging a violation of this Agreement or any local or other agreement amendatory or supplemental hereto, the Union shall be the sole and exclusive representative of the employee or employees covered by this Agreement. The disposition or settlement, by and between the Corporation and the Union, of any complaint or other matter, shall constitute a full and complete settlement thereof and shall be final and binding upon the Union and its members, the employee or employees involved and the Corporation.

Neither the Corporation, nor the Union, nor any employee or group of employees, may initiate or cause to be initiated or press any court action claiming or alleging a violation of this Agreement or any local or other agreement amendatory or supplemental hereto, where such claim is also the subject matter of a complaint which is then open at any step of this Complaint Procedure.

No employee or former employee shall have any right under this Agreement in any claim, proceeding, action or otherwise on the basis, or by reason, of any claim that the Union nor any Union officer or representative has acted or failed to act relative to presentation, prosecution or settlement of any complaint or other matter as to which the Union or any Union officer or representative has authority or discretion to act or not to act under the terms of the Agreement.

Paragraph 49 of the agreement bans any strikes by the Union for any reason during the lifetime of the contract.

Plaintiffs originally filed suit in Wayne County, Michigan circuit court alleging that GM's failure to offer them permanent positions constituted a breach of the parties' collective bargaining agreement. Plaintiffs also claimed that the Union breached its duty of fair representation. Both suits were removed to United States District Court. By stipulation, the Union was dismissed from both actions. GM moved for summary judgment in both suits claiming that the collective bargaining agreement grievance procedures were exclusive and final. Summary judgment was granted in each case and each suit was dismissed. Plaintiffs filed timely appeals.

 Section 301(a) of the Labor Management Relations Act provides a federal remedy for breach of a collective bargaining agreement. 29 U.S.C. § 185(a). An employee may bring an action under § 301 against his employer if he has been dismissed in violation of the collective bargaining agreement. *Hines v. Anchor Motor Freight,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). However, an employee is required to exhaust any grievance procedure contained in the collective bargaining agreement. *Clayton v. International Union,* 451 U.S. 679, 101

---

**2.** Paragraph 47 states:

If an employee feels that such policies are not applied properly to him, the question may be taken up with a designated representative of Local Management. If the matter is not resolved satisfactorily, the matter may then be referred to the International Union. Thereafter the matter may be discussed by representatives of the International Union with the Personnel Staff of the Corporation.

S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Anderson v. Ideal Basic Industries,* 804 F.2d 950, 952 (6th Cir.1986). Furthermore, if a collective bargaining agreement contains exclusive and final procedures for the resolution of employee grievances, an employee will be prohibited from bringing an action under § 301 absent an allegation that his union breached its duty of fair representation. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Recently, in *Groves v. Ring Screw Works, Ferndale Fastner Division,* —— U.S. ——, 111 S.Ct. 498, 112 L.Ed.2d 508 (1990), the Supreme Court reiterated the policy favoring judicial enforcement of collective bargaining agreements. The Court noted that, "there is a strong presumption that favors access to a neutral forum for the peaceful resolution of disputes." [3] *Id.* 111 S.Ct. at 502. The Court concluded that any agreement purporting to divest the courts of jurisdiction to resolve disputes would have to be clearly written to evidence such an intent. *Id.*

Based upon the clear language of GM–UPGWA collective bargaining agreement, we find that the grievance procedures outlined in that agreement were meant to be final and exclusive and, therefore, plaintiffs cannot maintain a direct action against GM for a breach of contract. The complaint procedure established by the agreement involves four steps. An appeal from the fourth step to an "impartial umpire" may be instituted for matters involving the application of the terms of the agreement, but not for matters of company policy. Grievance JG–2–87 was not arbitra-

ble under the agreement because it involved an alleged violation of the temporary employment policy as set forth in the December 4, 1984 attachment to the collective bargaining agreement. The other available complaint procedure, as outlined in paragraph 47 of the agreement, was conducted without reaching a settlement.

The second paragraph of § 36 provides that, "[w]ith respect to the processing, disposition and/or settlement initiated under the Complaint Procedure Section of this agreement," or "any court action claiming or alleging of this agreement or any local or other agreement amendatory or supplemental hereto, the Union shall be the sole and exclusive representative of the employee or employees covered by this Agreement." This paragraph further provides that:

> This disposition or settlement, by and between the Corporation and the Union, of any complaint or other matter, shall constitute a full and complete settlement thereof and shall be *final* and *binding* upon the Union and its members, the employee or employees involved and the Corporation. (emphasis added).

The third paragraph of § 36 provides that the complaint procedure established under the collective bargaining agreement is exclusive. It prohibits any court action alleging a violation of this agreement or any local or other agreement where it is the subject of a complaint which is then open at any step of the procedure.

The plaintiffs attempt to escape the language of § 36 by arguing that this section is applicable only to those disputes which are arbitrable. The language of this section, however, indicates otherwise. Although the first paragraph of § 36 speaks solely to the appealability of an "umpire's decision," the second paragraph speaks in much broader terms: "[w]ith respect to the processing, disposition and/or settlement initiated under the *Complaint Procedure*

---

**3.** In *Groves,* the Supreme Court reversed a decision of this circuit which had held that an employee was prohibited from bringing a § 301 cause of action against his employer for discharge in violation of the collective bargaining

agreement because the collective bargaining agreement implied that a strike, or other job action, was the exclusive remedy for failure of successful resolution of a grievance.

*Section* of this Agreement ... [such] disposition or settlement ... shall constitute a full and complete settlement thereof and shall be final and binding upon the Union and its members...." (emphasis added). This language indicates that *any* disposition under the complaint procedure was intended to be final and binding.

 Along with pursuing a breach of contract claim, plaintiff Raymond D. Vargo also claimed to be a victim of reverse racial discrimination in violation of Michigan's Elliott–Larsen Civil Rights Act, MCLA 37.-2101 *et seq.* Vargo was fired for leaving his security guard post without permission in violation of Shop Rule 11. The district court granted summary judgment to GM finding that Vargo had failed to establish a *prima facie* case of disparate treatment on the basis of race. Specifically, the district court found that Vargo had failed to identify a similarly situated black who was treated differently. He argues here that another per diem security guard, a black man named Jefferson Clay, who was only suspended for one and a half days for leaving his post, provides a basis for his discrimination claim. However, the record as of the time of Clay's suspension establishes that Clay left his post at the end of his shift under the mistaken assumption that he was being relieved, whereas Vargo left his post during mid-shift, a much more serious offense. Therefore, Vargo and Clay were not disciplined for the same or similar violation.

The judgment of the district court in both cases is affirmed.