946 F.2d 894
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gloria ACKER, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, International United Automobile
Workers Union, United Automobile Workers Association of
America Local 651 and 659, United Automobile Workers
Association of America, Local 659, Defendants-Appellees.
 Nos. 90-2140, 91-1083.
 United States Court of Appeals, Sixth Circuit.
 Oct. 11, 1991.
 
 Before BOYCE F. MARTIN, Jr. and NATHANIEL R. JONES, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Gloria Acker appeals the district court's dismissal of her action against the defendants, General Motors Corporation, United Automobile Workers Association of America, Local 651, and International United Automobile Workers Union. Acker alleges breach of the collective bargaining agreement by GMC and the Unions, and breach of the Unions' duty of fair representation. For the reasons set forth below, we affirm the district court's ruling.
 
 
 2
 Acker's claims fall under the Labor Management Relations Act, § 301, 29 U.S.C.A. § 185. Under section 301(a), a federal remedy is provided for breaches of collective bargaining agreements. Id. Under this provision, an employee may bring an action against her employer if the employer dismissed her in violation of the collective bargaining agreement. Hines v. Anchor Motor Freight, 424 U.S. 554, 562 (1976). The employee, however, must first exhaust any grievance procedure contained in the collective bargaining agreement. Anderson v. Ideal Basic Industries, 804 F.2d 950, 952 (6th Cir.1986). Further, if the collective bargaining agreement contains exclusive and final procedures for the resolution of grievances, the employee is prohibited from bringing an action under § 301, absent an allegation that her union breached its duty of fair representation. Vaca v. Sipes, 386 U.S. 171 (1967).
 
 
 3
 The district court granted summary judgment in favor of the Unions on the fair representation claim because the court found there was no genuine factual issue that either the Local or the International Union had breached its duty of fair representation. The court's actions represent a reversal of the magistrate's determination in this matter. The court acknowledged that there were also alternative legal legal issues that might terminate Acker's claim, including failure to exhaust union remedies, but the court expressly refused to address these issues given the finding of no breach of duty. Following the dismissal of Acker's fair representation claim against the Unions, the court found that she could not bring a breach of bargaining agreement claim against GMC, as the fair representation claim and the breach of bargaining agreement claim were inextricably linked. Thus, the court granted summary judgment in favor of GMC.
 
 
 4
 On appeal, Acker claims that there are genuine issues of material fact that make summary judgment in her case improper, and that the district court's reversal of the magistrate's determination was an abuse of discretion. Acker also responds to alternative arguments raised by the Unions and GMC that she failed to exhaust intraunion remedies and that she is barred from bringing her claim by the statute of limitations. In response to these alternative bases for the district court's holding, Acker argues that her lawsuit is not barred by exhaustion principles. She bases her assertion on certain statements she claims Union officials made to her which led her to believe further pursuit of her claim through union procedures would be futile. Further, Acker claims she did not violate the six-month statute of limitations that applies to such § 301 claims given the alleged misrepresentations to her by Union officials.
 
 
 5
 GMC and the Unions respond that the district court's decision was correct because no factual issues are in dispute, because the International did all it could to resolve Acker's grievance, and because the failure to resolve the grievance was the result of the claim not being capable of arbitration under the agreement between GMC and the Unions. GMC and the Unions also respond to Acker's secondary arguments regarding exhaustion of union remedies and timeliness. Because we find the district court's determination on summary judgment was properly based on a finding of no breach of fair representation, we will not address the secondary arguments of exhaustion and timeliness raised by the parties on appeal.
 
 The Source of Acker's Section 301 Claims
 
 6
 Acker's lawsuit has its origins in the Unions' handling of a hiring grievance filed by the Union, on Acker's behalf, against GMC. Acker's grievance was prompted by an unfortunate sequence of events during which Acker, following a lay-off, was mistakenly denied a re-hire position by GMC. All the parties agree that, as a consequence of GMC's mistake, Acker is now effectively denied any opportunity for re-hire in the near future. Acker makes various charges concerning the handling of her grievance by the Unions. A detailed recitation of the handling of Acker's grievance follows.
 
 
 7
 The re-hire process and the grievance procedures related to re-hire are detailed in the GM-UAW National Agreement at Appendix A and Document 21. Under these provisions, a contractual grievance procedure is used to resolve problems or complaints. The subject grievances are not capable of arbitration, however, and any disposition under the procedures is final and binding.
 
 
 8
 Following Acker's re-hire difficulties, Local 651 filed a grievance on her behalf. Document 21 governed the grievance and required that the Local 651 grievance be transferred to the UAW Regional Office for handling by UAW International. Document 21 grievances are removed from the Local grievance process because a Local cannot negotiate with the management of any employer unit other than that which the particular Local serves. Acker's Local was based in one plant location while her claim arose from a problem that occurred at another plant location. Consequently, only the International could deal with the GMC unit that made the mistake in Acker's case.
 
 
 9
 With the International's entry into the matter, Local Union 651 Committeeman Kevin Hall, acting on instructions from the International, withdrew Acker's grievance from the Local's processing. Acker, concerned about the status of her grievance, appealed Hall's action to the International. Upon investigating her complaint, Maurice Treadwell, an International Union Representative, informed Acker that the International was still pursuing her grievance. Treadwell, however, erroneously stated that the matter was pending at the Local Union level, instead of the International Union level.
 
 
 10
 After substantial negotiations with GMC regarding Acker's grievance, the International determined that her claim could not be arbitrated. On March 13, 1988, an International Union Representative advised Acker that the International Union could do nothing further to have her rehired. The representative told her, however, that she could appeal the International's determination to the Local Union membership at a meeting held the same day. Acker did appeal the International's decision at this meeting, but the Local denied her appeal.
 
 
 11
 Thereafter, Acker received a letter dated March 18, 1988 that told her she could appeal the Local membership's March 13 vote against her. Instead, Acker filed a law suit on April 19, 1988, against the Unions and GMC. She claims she was told at the March 13 meeting that the Union would continue to process the grievance despite the negative vote of the Local. The Local Union, however, denies any such statements were ever made.
 
 
 12
 Acker voluntarily dismissed her first lawsuit when she realized that she had not exhausted the internal union appeal process before filing the court action. On June 28, 1988, she sent a letter of appeal to the International Union President's office. This was rejected on July 29, 1988 as untimely in relation to the membership meeting of March 13, 1988. Thereafter, Acker filed the present lawsuit.
 
 The § 301 Claims
 
 13
 The Alleged Breach of Fair Representation by the Unions:
 
 
 14
 The district court found that there was no factual issue that went to the nature of the Unions' alleged breach of duty of fair representation. The court found the following facts were undisputed: 1) that the Local Union, though it wrote up the grievance, had no responsibility for any decisions made with regard to Acker's grievance, once it transferred the matter to the International Union; 2) that the International Union exclusively handled the matter after the point of transfer; 3) that the grievance was ultimately not capable of arbitration, though the International Union processed it as far as it could; 4) that when the International Union realized it could go no further with Acker's grievance, it advised the Local Union to have a Local Union membership vote to reject the grievance, as is required of a grievance written at the local level; and, 5) that no one at the Local Union had anything to do with the International's final decision. The court further found that there was only one area of factual dispute and that concerned what was said to Acker by Local Union officials at the meeting of the Local Union on March 13, 1988. However, the court concluded that these disputed facts did not reflect upon the International Union's fair representation of Acker in its dealings with GMC and so could be discarded for summary judgment purposes.
 
 
 15
 The court acknowledged that some of the undisputed facts reflected poorly on the Local and International Union's dealings with Acker. For example, the court found as a matter of fact that Local Union representative Hall did make several improper and intimidating phone calls to Acker and that the International Union did, indeed, mistakenly indicate to Acker that the Local was processing her grievance. Nonetheless, the court concluded these facts did not bear on Acker's fair representation claim:
 
 
 16
 The complication of Hall's phone calls, while very suspicious and certainly most unfortunate, is not shown to have had anything to do with the grievance handling. The mistake in the letter likewise is unfortunate, but does not create a factual issue where the undisputed evidence revealed the grievance was processed as far as it could go, but could not be forced to arbitration if GM objected which GM did.
 
 
 17
 Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71 (1976), establishes Acker's burden under this section 301 claim: "To prevail against either the company or the Union, petitioners must show not only that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." Breach of duty of fair representation occurs where 1) Union conduct is arbitrary; 2) the Union processes the grievance in a perfunctory fashion; or, 3) the Union ineptly handles the grievance. Vaca v. Sipes, 386 U.S. 171, 177 (1967); Milstead v. International Brotherhood of Teamsters, 580 F.2d 232, 235 (6th Cir.1978). Conclusory allegations of union misconduct are not enough and the party must present evidence of impermissible motivation by agents of the union. See Celotex v. Catrett, 477 U.S. 317, 322-24 (1986). Further, a union is not required to press every grievance, even every meritorious grievance, to arbitration. Vaca v. Sipes, 386 U.S. 171 (1967). This is particularly true in the present case where the grievance was not capable of arbitration given the terms of the collective bargaining agreement between the corporation and the Union.
 
 
 18
 The district court properly held that there was no material fact at issue and that the undisputed facts justified summary judgment for the defendants. The factors described below were deemed dispositive by the court.
 
 
 19
 First, by the terms of the GM-UAW agreement and Document 21, the International Union, not the Local Union, was responsible for the handling of Acker's grievance. Once Hall followed the instructions of the International to withdraw Acker's grievance from the local level, the Local Union's responsibility to handle Acker's grievance ended.
 
 
 20
 Second, the evidence demonstrates that the International properly pursued Acker's grievance to its conclusion. The grievance procedures outlined in Appendix A and Document 21 of the GM-UAW agreement are final and exclusive in nature. Under these provisions, once it became apparent that GMC would not arbitrate Acker's claim, no other remedy could be forthcoming for Acker. We recently decided the case Alford, et al. v. General Motors Corp., 926 F.2d 528 (1991), which construes a similar GMC contractual provision. We found in Alford that, where the grievance procedures outlined in an agreement are meant to be final and exclusive, a plaintiff cannot maintain a direct action against the employer for a breach of contract absent a breach of fair representation claim against the UAW. Id. at 531.
 
 
 21
 Third, although Hall's harassing phone calls to Acker were improper, Hall was in no way shown to have played any role in the handling of Acker's grievance claim other than in signing the paperwork, under the International Union's direction, to terminate the claim at the local level. This termination at the local level was proper given the GM-UAW contract terms.
 
 
 22
 Finally, the court was correct in finding that Treadwell's mistaken representation to Acker regarding the status of her claim, as a matter of law, does not rise to the level of a breach of duty of fair representation. Journeymen Pipefitters v. NLRB, 712 F.2d 225, 229 (6th Cir.1985); Poole v. Budd, 706 F.2d 181, 183-85 (6th Cir.1983). Even though Treadwell misrepresented that the Local Union was pursuing Acker's grievance, this was an isolated mistake and had no bearing on the manner in which the International Union pursued the grievance against GMC.
 
 Breach of Bargaining Agreement Claim
 
 23
 The district judge properly found that summary judgment should be granted to GMC. As the Court found in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164 (1983), the two claims, that the employer breached the collective bargaining agreement and that the Unions breached a duty of fair representation, are inextricably linked. In order for Acker to maintain a claim against GMC, she would have to show that the Unions breached a duty of fair representation. Vaca v. Sipes, 386 U.S. 171 (1976) (where a collective bargaining agreement contains exclusive and final procedures for the resolution of employee grievances or complaints, an employee may not pursue a section 301 breach of contract action absent a viable breach of fair representation). Since we have already determined that the court properly dismissed her fair representation claim, Acker can no longer bring a breach of collective bargaining agreement claim against GMC.
 
 
 24
 For the reasons stated above, the judgment of the district court is affirmed.