968 F.2d 1215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Howard C. KEMP, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Delco Products Division;
District 7, International Union of Electronic, Electrical,
Salaried Machine and Furniture Workers; International Union
of Electronic, Electrical, Salaried Machine and Furniture
Workers AFL-CIO; Local 755 International Union of
Electronic, Electrical, Salaried Machine and Furniture
Workers, AFL-CIO, Defendants-Appellees.
 No. 91-3587.
 United States Court of Appeals, Sixth Circuit.
 July 8, 1992.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges; KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Howard C. Kemp, appeals the entry of summary judgment in favor of defendants, the Delco Products Division of General Motors Corporation ("Delco"), the International Union of Electronic, Electrical, Salaried Machine and Furniture Workers ("IUE"), District Council 7 of the IUE, and Local 755 of the IUE (hereinafter, "Local 755") (collectively, "defendants"), in this hybrid section 301/duty-of-fair-representation claim arising out of an alleged adverse employment action. For the reasons that follow, we affirm.
 
 
 2
 * Kemp began his employment with Delco in 1969 and worked there until his termination in 1988, with a brief hiatus in the 1970s.[1] During the period in question, the terms of Kemp's employment were governed by a collective bargaining agreement between Delco and Local 755, the certified collective bargaining unit for Delco employees.
 
 
 3
 In 1987, Delco and Local 755 entered into a Voluntary Termination of Employment Plan ("VTEP"), under which an employee could receive an incentive, or "buy-out," payment in exchange for voluntarily terminating his or her employment and foregoing all vested employment benefits. The VTEP application expressly stated that it was irrevocable and provided that an employee's discharge prior to his or her scheduled attrition date would render the application null and void.
 
 
 4
 On February 26, 1988, Kemp executed a VTEP application on which he indicated that his first choice was an attrition date between December 1 and December 31, 1988. Delco accepted Kemp's application and subsequently informed him that he would be terminated on December 1, 1988. Kemp then contacted his Union representative and stated that he had understood his termination date to be December 31, 1988. On December 2, 1988, Kemp filed a second VTEP application, this time designating his preferred termination date as January 1, 1989.
 
 
 5
 On December 15, 1988, while still employed at Delco, Kemp began distributing pamphlets regarding the General Motors Suggestion Plan. Delco apparently interpreted the pamphlets as unfairly critical of its implementation of the plan. Later that day, Delco suspended Kemp's employment for violating Factory Rule 28, which prohibits "[t]he making or publishing of false, vicious or malicious statements concerning any employe, supervisor, the Company or its products." J.A. at 237. On December 19, Kemp's suspension was converted into a dismissal. As a result of Kemp's termination, Delco considered him no longer eligible to receive any payments under the VTEP program.
 
 
 6
 On December 15, the date of his suspension, Kemp filed a grievance challenging the disciplinary action. On December 19, the date on which Kemp was dismissed, Kemp informed Delco that he wished to rescind his second VTEP application. When Kemp learned that Delco would not rescind his application, Kemp filed a second grievance on January 3, 1989, protesting Delco's refusal to rescind his second VTEP application.
 
 
 7
 Both of Kemp's grievances were denied at the second step of the grievance procedure and were thereupon consolidated for purposes of a third-step hearing, held on February 22, 1989. After the grievances were denied, Local 755 filed notices of appeal. The grievances were again denied on June 15, 1989. Local 755 then filed further notices of appeal to an umpire.
 
 
 8
 On August 10, 1989, prior to the submission of Kemp's grievances to an umpire, representatives of Delco and Local 755 met to negotiate a settlement of Kemp's grievances. At the conclusion of these negotiations, Delco agreed to rescind Kemp's discharge and retroactively restore him to the status of an employee in good standing scheduled to sever his employment under the VTEP program on January 1, 1989. The parties agreed that Kemp would receive the full amount of his VTEP payments plus all wages and fringe benefits that Kemp would have received through January 1, 1989 had he not been terminated.
 
 
 9
 Meanwhile, during the Spring of 1989, Kemp ran for President of Local 755.[2] Nominations were made at a Union meeting held on April 9, 1989. Local 755's incumbent President, Mike Fisher, set a policy that candidates could not make campaign speeches at the time of their nominations, but could speak at a later point in the meeting. Kemp objected to the policy. When he was not permitted to speak during the nomination period, he left.
 
 
 10
 During the election campaign, Delco did not permit Kemp onto plant premises, ostensibly because Kemp was no longer a Delco employee. It also appears that on at least one occasion, as Kemp attempted to hand out campaign literature, Fisher and a number of his supporters physically prevented Kemp from making contact with union members. Kemp ultimately failed in his attempt to unseat Fisher as president of Local 755.
 
 
 11
 On February 8, 1990, Kemp filed the instant complaint against defendants setting forth numerous causes of action, including Delco's violation of his employment contract and the Union's breach of its duty of fair representation. On February 7 and 11, 1991, Delco and the Union, respectively, filed motions for summary judgment, to which Kemp responded. On June 10, 1991, the district court granted summary judgment to both defendants with respect to all causes of action except Kemp's claim against the Union for relief arising under section 101 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411 (1988). The court, pursuant to Federal Rule of Civil Procedure 54(b), entered a final judgment on the adjudicated claims. Kemp then filed the present timely appeal.
 
 II
 
 12
 Kemp's primary claim on appeal is that the district court erred in granting summary judgment in favor of defendants on his claims for breach of contract and breach of the duty of fair representation. We review a district court's grant of summary judgment de novo. Vollrath v. Georgia-Pac. Corp., 899 F.2d 533, 534 (6th Cir.), cert. denied, 111 S.Ct. 345 (1990).
 
 
 13
 Section 301(a) of the Labor Management Relations Act provides a federal remedy for an employer's breach of a collective bargaining agreement. 29 U.S.C. § 185(a) (1988). Where, as here, the collective bargaining agreement contains exclusive and final procedures for the resolution of employee grievances, it is the primary duty of the union to fairly represent an employee who has been unjustly treated by his or her employer, and the employee has no cause of action against the employer unless the union breaches its duty of fair representation. Alford v. General Motors Corp., 926 F.2d 528, 530-31 (6th Cir.1991). A union will be held to have breached its duty of fair representation only where its actions were arbitrary, discriminatory, or in bad faith. Vaca v. Sipes, 386 U.S. 171, 190 (1967). The burden of proof on the issue of fair representation lies with the plaintiff. Ryan v. General Motors Corp., 929 F.2d 1105, 1109 (6th Cir.1989).
 
 
 14
 Although Kemp does not suggest that the Union's representation was discriminatory, he urges that the Union disposed of his grievance in bad faith and in an arbitrary manner. A union's representation is arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." Air Line Pilots Ass'n v. O'Neill, 111 S.Ct. 1127, 1130 (1991) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)). To establish that a union's conduct was motivated by bad faith, a plaintiff must make an affirmative showing of bad faith and may not rest on conclusory allegations. Whitten v. Anchor Motor Freight, Inc., 521 F.2d 1335, 1341 (6th Cir.1975), cert. denied, 425 U.S. 981 (1976). Moreover, mere negligence or mistaken judgment is insufficient to establish a breach of the union's duty. Poole v. Budd Co., 706 F.2d 181, 183 (6th Cir.1983).
 
 
 15
 The parties agree that Kemp signed an irrevocable VTEP application requesting a termination date between December 1 and December 31, 1988, and that Delco accepted the application. It is also undisputed that Kemp filed a second VTEP application requesting a termination date of January 1, 1989. Finally, the parties agree that the settlement ultimately reached by the Union and Delco rescinded Kemp's disciplinary discharge and granted him the full benefits to which he would have been entitled under the second VTEP application. Thus, Kemp received exactly what he would have received had he been employed at Delco until January 1, 1989 and, on that date, severed his employment with Delco consistent with the terms of the second VTEP application. Indeed, by receiving a termination date of January 1, 1989, Kemp received more in financial and fringe benefits than he would have received had the December 1, 1988 termination date of the first VTEP application been enforced.
 
 
 16
 We believe the settlement reached on Kemp's behalf falls far short of supporting a claim of bad faith or arbitrariness. Kemp insists that, once the Union and Delco rescinded his disciplinary discharge, he was entitled to reinstatement to his former position at Delco. Kemp's dissatisfaction with the terms of the settlement, however, simply do not raise an inference of arbitrariness or bad faith. As the district court explained,
 
 
 17
 [w]hile the Court makes no determination regarding Kemp's theory that his VTEP agreement was voided by his discharge, there is no doubt that the Union could have reasonably believed that it had negotiated for Kemp all that to which he was entitled. Given Kemp's prior voluntary agreement to terminate his employment on January 1, 1989, it cannot be said that the Union's decision to accept the settlement was arbitrary or in bad faith.
 
 
 18
 J.A. at 296.
 
 
 19
 Kemp also points to his allegations of defendants' efforts to frustrate his bid for Local 755 president as evidence of bad faith. Kemp fails, however, to connect these allegations to any specific conduct by defendants in the processing of his grievance. Kemp also alleges that his disciplinary discharge was unjustified. The validity of Kemp's discharge is, however, irrelevant for purposes of showing a breach of fair representation, as the settlement of Kemp's grievances effectively rescinded his disciplinary discharge. Similarly, although Kemp contends that the district court erred in finding that he distributed the pamphlets leading to his termination and in finding that these pamphlets were in fact critical of Delco, neither of these findings is relevant to the issue of whether Local 755 acted in bad faith.
 
 
 20
 Kemp's remaining objections are without merit. Although Kemp maintains that Local 755's bad faith manifested itself in the delayed processing of his grievance, Kemp fails to present evidence that his grievance was processed more slowly than those of other, similarly situated employees. Moreover, even if there did exist some delay in the processing of Kemp's grievance, Kemp has failed to offer evidence suggesting that this delay was the result of bad faith or arbitrariness. Kemp also finds evidence of bad faith in Local 755's failure to obtain his agreement before accepting the settlement. Kemp offers no basis, however, for his assertion that Local 755 was under a duty to obtain his ratification of the settlement prior to its acceptance of the settlement. See Stidham v. White Consol. Indus., 685 F.Supp. 1008, 1013 (W.D.Mich.1987) (holding that plaintiff's dissatisfaction with terms of settlement did not demonstrate bad faith). In sum, we affirm the district court's entry of summary judgment in favor of defendants on Kemp's claim against Local 755 and IUE for breach of the duty of fair representation and against Delco for violation of the collective bargaining agreement.[3]
 
 II
 
 21
 Although all but one of the claims alleged in Kemp's complaints were disposed of adversely to him on summary judgment, Kemp's briefs on appeal address solely the district court's disposition of his claim for breach of contract against Delco and breach of Local 755's duty of fair representation. Kemp states in the conclusion of his opening brief that "[i]t is not the intent of Kemp to waive any of the other claims." Br. of Kemp at 25. This court has consistently held, however, that "[w]e normally decline to consider issues not raised in the appellant's opening brief." Priddy v. Edelman, 883 F.2d 438, 446 (6th Cir.1989); see also Continental Motel Brokers, Inc. v. Blankenship, 739 F.2d 226, 230 n. 5 (6th Cir.1984) (failure to object to district court's findings on appeal waives objections to those findings). Accordingly, we find that Kemp's failure to challenge other aspects of the district court's grant of summary judgment waives any allegations of error he might have with respect to those remaining claims.
 
 IV
 
 22
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Because Kemp appeals from an adverse summary judgment order, the following statement of facts views the evidence of record, and draws all reasonable inferences therefrom, in a light most favorable to him. See Curry v. Vanguard Ins. Co., 923 F.2d 484, 485 (6th Cir.1991)
 
 
 [2]
 Union rules allow a discharged employee to run for office if he or she has a grievance pending
 
 
 [3]
 Kemp also challenges the district court's denial of his motion to strike the affidavits, offered by defendants, of Terry Mack and Ronnie Hall, and contends that the affidavits did not meet the requirements set forth in Federal Rule of Civil Procedure 56(e). See Fed.R.Civ.P. 56(e) ("affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). Because both affidavits clearly met the requirements of Rule 56(e), we agree with the district court that Kemp's objections to the affidavits are "frivolous." J.A. at 311