1 F.3d 1242
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert S. STANFIELD, Plaintiff-Appellant,
v.
TENNESSEE VALLEY AUTHORITY, Defendant-Appellee.
 No. 92-6087.
 United States Court of Appeals, Sixth Circuit.
 July 19, 1993.
 
 Before: GUY and SUHRHEINRICH, Circuit Judges; and DOWD, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff appeals the district court's order granting summary judgment in favor of defendant, Tennessee Valley Authority (TVA), in this dispute arising out of TVA's breach of a collective bargaining agreement (CBA), which governed the employment relationship between plaintiff and TVA. We AFFIRM in part, and DISMISS in part for lack of subject matter jurisdiction.
 
 I.
 
 2
 The facts in this case are not in dispute. Plaintiff worked as a "Nuclear Power Plant Maintenance Specialist" for TVA. He was suspended and eventually terminated in October 1988 for allegedly submitting fraudulent travel vouchers. On November 4, 1988, plaintiff filed a grievance under the terms of the CBA and sought reinstatement. Grievance hearings failed to produce a resolution, so the matter was submitted to binding arbitration in accordance with the terms of the CBA. On November 29, 1990, the arbitrator issued his opinion, finding that plaintiff's termination was unwarranted and unjustified. He ordered the following:
 
 
 3
 TVA is directed to rescind the termination of Grievant's employment and to reinstate Grievant to his job retroactively to November 23, 1988. TVA is also directed to pay Grievant the full amount of wages which he would have earned from his employment with TVA if he had not been suspended on December 15, 1987 or terminated, less any amounts which he received from other employment in the interim, and to restore annual leave which he took because of his suspension.
 
 
 4
 When plaintiff was suspended, he occupied an SD-2 level position. In calculating his award of backpay, TVA figured that plaintiff would have been promoted in the normal progression of his position to an SD-3 level position. During the pendency of his grievance and arbitration, both the SD-2 and SD-3 level positions were eliminated through reductions in workforce. As a result, on January 31, 1991, TVA sent plaintiff a letter indicating that plaintiff would receive backpay from December 15, 1987, the effective date of his suspension, to July 14, 1989, the date on which the position plaintiff would have been occupying (i.e., an SD-3 position) was eliminated by the workforce reduction. In other words, TVA notified plaintiff that he could not be reinstated to a position that was eliminated by the workforce reduction, and accordingly, no backpay would issue for the period after the workforce reduction.[1] Along with the letter describing plaintiff's backpay, TVA sent plaintiff notice (albeit over one year late) of a workforce reduction that eliminated the SD-3 level position.
 
 
 5
 In April 1991, plaintiff received his backpay check as calculated by TVA. He did not challenge the award through various procedures available to him. Rather, he filed this contract action, claiming that TVA failed to abide by the arbitration award by refusing to pay him from the date of suspension to the date of the arbitration award. Under 28 U.S.C. Sec. 2202, he sought a judgment declaring that TVA violated the terms of the arbitration award, and he sought an order enjoining TVA to pay the disputed sum.
 
 
 6
 Finding that TVA fully complied with the terms of the arbitration award, the district court granted TVA's motion for summary judgment. This timely appeal followed.
 
 II.
 A.
 
 7
 Relying on Chicago Newspaper Guild v. Field Enterprises, Inc., 747 F.2d 1153 (7th Cir.1984), plaintiff argues that the district court erred in concluding that TVA abided by the terms of the arbitral award. In Field, the plaintiff was terminated from employment with the Daily News. He filed a grievance, which eventually went to arbitration. The arbitrator directed the employer "to return ... [the employee] to work at the beginning of the payroll period following receipt of ... [the arbitral award]." Because the Daily News was permanently closed during the pendency of the arbitration proceeding, the employer attempted to comply with the award by reinstating the plaintiff and retroactively laying him off as of the date of the closing. The plaintiff was awarded backpay from the date of his termination to the retroactive date of his layoff.
 
 
 8
 The court held, inter alia, that the plaintiff was entitled to backpay from the date of termination to the date of the arbitral decision. The court noted that the arbitral award clearly stated that the plaintiff was to be reinstated to "work" (that is, reinstated to employment), not his particular job. Thus, it was of no import that the plaintiff's actual position was eliminated.
 
 
 9
 The arbitral award differs significantly in this case. Unlike the award in Field, the award in this case mandated reinstatement to the particular job that plaintiff held before he was terminated: "TVA is directed to ... reinstate [g]rievant to his job...." (emphasis added). As noted above, that particular position was eliminated in a workforce reduction. Faced with the impossibility of reinstating plaintiff to, and compensating him for, a position that no longer existed, TVA awarded plaintiff backpay from the date of termination to the date of the workforce reduction. Thus, TVA complied in the only possible way with the plain language of the arbitral award. Further, we note that TVA's actions were consistent with the directive in the arbitral award "to pay [g]rievant the full amount of wages which he would have earned from his employment with TVA if he had not been suspended on December 15, 1987 or terminated...." (emphasis added). For these reasons, we decide that the district court did not error in concluding that TVA complied with the plain language of the arbitral award.
 
 B.
 
 10
 Plaintiff also complains that he did not receive timely notice of the workforce reduction in accordance with the provisions of the CBA. He argues that TVA's alleged failure to timely notify him of the workforce reduction caused him to lose his opportunity to transfer to a new position instead of being fired and caused him to lose his opportunity to transfer to a new position instead of being fired and caused him to lose his opportunity to acquire job training. He also claims that TVA should have informed the arbitrator of the workforce reduction so that the arbitrator had all the relevant information needed to fashion an appropriate remedy, and that TVA's failure to do so precludes it from relying on the workforce reduction to reduce his backpay.
 
 
 11
 Plaintiff's claims relating to the workforce reduction are barred under the doctrine of exhaustion. The exhaustion of contractual grievance and arbitration provisions is a prerequisite to initiating an action against an employer for breach of a CBA. Alford v. General Motors Corp., 926 F.2d 528, 530 (6th Cir.1991) (citing Clayton v. International Union, 451 U.S. 679 (1981)); Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210 (6th Cir.), cert. denied, 484 U.S. 820 (1987). The issue of whether the dispute must be arbitrated prior to the initiation of judicial proceedings is determined by looking to the CBA to see if it permits or requires arbitration. Apponi, 809 F.2d at 1216. Here, under the CBA, grievances that involve termination, suspension, demotion, or misapplication or misinterpretation of an express provision in the CBA may proceed to arbitration. Because plaintiff's claim alleges a violation of the workforce reduction provision of the CBA, it is a matter that may go to arbitration under the CBA. Accordingly, the matter must proceed through the contractual grievance and arbitration procedures before the initiation of judicial proceedings. This is true even if the employee is no longer employed at the time he pursues his contractual remedies. Merk v. Jewel Companies, Inc., 848 F.2d 761 (7th Cir.), cert. denied, 488 U.S. 956 (1988). Thus, the court lacks jurisdiction over plaintiff's claims arising out of, or relating to, the workforce reduction.
 
 III.
 
 12
 For all of the reasons stated, we DISMISS plaintiff's claims relating to TVA's workforce reduction and, with respect to all remaining issues, AFFIRM the district court's judgment in favor of TVA.
 
 
 
 *
 Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Plaintiff was paid for the reasonable amount of overtime pay that he would have earned from the date of his suspension to the date of the workforce reduction. Additionally, defendant restored plaintiff's annual sick leave and his membership in the TVA Retirement System. TVA also offered to restore plaintiff's medical, dental, and accident insurance coverage